## MONTROSS *vs.* THE STATE OF GEORGIA.

1. The verdict in this case was not only supported, but was required, by the evidence.
2. A charge that the circulation of a newspaper other than a pictorial one was not prohibited under the law then being considered (section 4537 (b) of the Code), however much the failure to make such a publication penal was to be regretted, if erroneous, did not hurt the defendant.

3. A charge submitting to the jury not only the reading matter, but also the illustrations in the newspapers given away, in order that they might determine their character, was correct and applicable to the case.

4. Where a defendant was indicted for giving away an indecent pictorial newspaper tending to debauch the public morals, with intent to circulate the same, when he sought in his statement to read to the jury an article in another newspaper, and to exhibit to them pictures publicly displayed elsewhere in the city where the trial occurred, which he claimed to be of a more indecent character, and as having a more direct tendency to debauch public morals than anything which appeared in the paper before the court, there was no error on the part of the court in interrupting the accused, and prohibiting him from so doing.

(*a.*) While considerable latitude has been allowed to a prisoner in making his statement, the privilege has never been carried so far as to allow the party to state wholly irrelevant matter, or such as would be violative of every principle and rule of evidence.

(*b.*) The record does not disclose what the pictures were which it was sought to exhibit, or what the articles were which it was sought to read, and this court cannot judge whether they were relevant or proper.

5. Every person is presumed to intend the natural and legal consequences of his conduct; and where the agent of a newspaper, knowing of the law of this state against circulating obscene literature, violated it for the express purpose of making a test case, or of vindicating the character of his paper, and to insure a prosecution, sought the chief of police, and gave him copies of the paper, he cannot complain that he succeeded in obtaining a prosecution, or that the court in its charge did him injustice as to the intent with which he committed the act, although the result of his experiment was different from that which he anticipated.

(*c.*) The sentence imposed is not matter proper for a motion for new trial.

April 25, 1884.

Criminal Law. Charge of Court. Practice in Supreme Court. Practice in Superior Court. Statement of Prisoner. Presumptions. Sentence. Before Judge CLARK. City Court of Atlanta. September Term, 1883.

Montross was tried in the city court of Atlanta on an accusation charging him with giving away indecent pictorial newspapers calculated to debauch public morals, known

as the "National Police Gazette." [See Code, §4537 (b).] It was admitted that defendant gave away two copies of this paper, one of them being given to the chief of police of the city of Atlanta ; but he insisted that it was not indecent, and did not tend to debauch public morals. He was convicted, and sentenced to pay a fine of $1,000.00 or work twelve months on the public works. He moved for a new trial, on the following grounds :

(1.) Because the verdict is contrary to evidence and the weight of evidence.

(2.) Because the court erred in not allowing defendant to make his statement in his own way, and to state everything which he deemed necessary in his defence. ["The court restricted defendant in his statement as follows : Defendant was stating to the jury his good faith in trying to establish the sale of his newspaper in Atlanta, and the want of intention on his part to violate the law. He said that the Police Gazette, the paper charged to be obscene and obnoxious to the statute of Georgia, was sold in every city in Georgia, without let or hinderance, save only the city of Atlanta. It had been decided to be not obscene by the United States postal authorities, after the most rigid examination, and it was sent through the mails to private subscribers all over the whole Union ; that no statute of Georgia prohibited the sale of the Police Gazette by name, but that the statute was directed against obscene literature calculated to debauch public morals ; that he honestly believed, as he had a right to believe, that his paper was a legitimate publication, and obnoxious to no statute of Georgia, either in its literature or in its illustrations. Defendant stated that there was nothing clandestine or hidden in his effort to establish the sale of his paper, but, on the contrary, he gave the paper to the chief of police of the city of Atlanta, and told him that he believed his paper to be a ligitimate publication in all respects. Defendant went on to state that his conviction that his paper could not be obnoxious to the statute of Georgia, was confirmed by

what he had read and seen in Atlanta.  He stated. that he
had seen articles in the Atlanta Constitution, giving the
date of the paper and names of the articles, that were
much broader than anything that ever appeared in the
Police Gazette ; and when he proposed to read these arti-
cles as a part of his statement, the court refused to allow
him to do so.  He also stated that he had seen pictures
in the windows for sale, on the most popular streets in
Atlanta, that were infinitely worse than anything of the
kind that could be found in the Police Gazette ; and when
he proposed to show these pictures to the jury, as a proof of
his good faith in the legitimacy of his paper, and his want of
intention to violate the law, the court refused to allow him
to do so, or to allow counsel for defendant to use the news-
papers and pictures (not as original evidence, but as matter
of argument), and to show, by comparison with papers ad-
mitted to be legitimate publications, that the Police Ga-
zette was in no sense obnoxious to the statute of Georgia."]

(3.) Because the court charged as follows : "The law has
no penalty for any paper, however indecent, which is unac-
companied with pictures.  Its penalty applies wholly to
pictorial newspapers; and, although it may be regretted
that other newspapers may shock the public decency by
the narration of events, yet they are not amenable to the
law.  Yet, in reference to such papers, you should consider
this distinction.  There is a distinction in stating a fact in
a newspaper as news, however horrid it may be, and giv-
ing pictures for the purpose of inflaming the passions of
the people, or debauching private and public morals.
What you read in our daily newspapers that may be ever
so horrid, indecent and vulgar, is permissible, because they
are current events of the day."

(4.) Because the court charged as follows : "It is for you
to determine now if there is anything in the reading mat-
ter and in the pictures which you consider offensive to
modesty and delicacy.  Now, what is modesty ?  Modesty
is said to be that which is womanly ; and why womanly ?

Because the best type we have of modesty is a virtuous woman in our christian civilization, and you are authorized to look at it from that standpoint, and see whether the pictures are indecent in that sense."

(5.) Because the court charged as follows : "Now, gentlemen of the jury, you have the right to ascertain the extent, to take into consideration the circumstances with which this thing was cone to whom it was the papers were delivered, and under what circumstances. If it was given to the chief of police of Atlanta, and you believe so given as to invite him to make a test case of it, with a view to seeing whether or not this was an indecent paper, and if he did it with that purpose, he would be guilty of the intent."

(6.) Because the court charged as follows : "But with respect to the statement : All of the statement that does not affect the issue—the material issue of guilt or innocence—is not to be considered by the jury; but it must be of such matters as affect the case at issue, before the jury can consider it so as to acquit the defendant upon it." [In this connection, the court had just charged as to the right of the jury to give the statement such weight as they thought proper, either to acquit of guilty intent or to raise a reasonable doubt.]

(7.) Because the fine imposed upon defendant was excessive, in view of the good faith on his part, and absence of all intention to violate the law

The motion was overruled, and defendant excepted.

C. D. Hill ; H. C. Glenn, for plaintiff in error.

W. D. Ellis, solicitor city court, for the state.

Hall, Justice.

The accused was tried in the city court of Atlanta, found guilty, and sentenced to pay a fine of one thousand dollars, or, in default thereof, to labor for one year on the public works, for giving away an indecent pictorial newspaper,

tending to debauch the public morals, with intent to circulate the same, known as the "National Police Gazette." He moved for a new trial, upon various grounds, which motion was overruled, and he excepted, and brought the case here by writ of error.

1. A glance at the pictures with which the papers sent up in the record are illustrated, and a slight examination of the printed matter, will be sufficient to fix the character of this publication as indecent, with an unmistakable tendency to vitiate the public taste and to debauch the public morals. The giving away and circulation of these papers having been admitted by the accused, the jury was clearly justified in returning a verdict of guilty; indeed, if they regarded their duty to the state, this evidence left them no alternative—it required the finding. There is, therefore, nothing in the two first grounds of the motion, that the verdict is contrary to evidence, without evidence to support it, and decidedly and strongly against the weight of evidence.

2. Under section 4537 (b) of the Code, which the accused was found guilty of violating, a charge by the court to the effect that the circulation of a newspaper other than a pictorial one, however indecent, was not prohibited by this law, however much the failure to make such a publication penal was to be regretted, if erroneous, did not hurt him, and therefore afforded no ground of exception.

3. A charge submitting to the jury not only the reading matter, but the illustrations, in the newspapers given away, in order that they might determine their character, was applicable to the case as made, and in accordance with the terms of the statute.

4. We are of opinion that the court did not err in interrupting the accused in making his statement to the jury, for the purpose of prohibiting him from reading to them an article from another newspaper, and also exhibiting to them pictures publicly displayed elsewhere, which he claimed to be of a more indecent character, and as hav-

ing a more direct tendency to debauch public morals than anything that appeared in the paper prosecuted. As well might the keeper of a lewd and disorderly house, or the proprietor of a gaming house or tables, claim that he had not violated the law, when called upon to answer for his offence, because others indulged in these nefarious practices openly and with impunity and were not prosecuted for their offences against public order and decency.

Under the Code, §4637, the defendant in a criminal case has the right to make to the court and jury a statement, not under oath, to which th> jury may give such weight as they may think proper, preferring it to the sworn testimony in the case, in the event they believe it to be true, and this court has in several instances given a wide scope to the subjects which the statement may embrace; but we apprehend that the privi.ege has never been carried so far as to allow the party to state wholly irrelevant matter, or such as would be violative of every principle and rule of evidence.

The cases of *Loyd vs. The State*, 45 *Ga.*, 58, and *Coxwell vs. The State*, 66 *Ib.*, 309, cited by the zealous and able counsel of the defendant as against this limitation of the privilege, in fact sustain it. In the first it is said that "where a prisoner makes a rambling statement, not pertinent to the issue, it is not error in the court to admonish him that he must confine his statement to matters bearing on the case;" and in the other, that "the prisoner may be restrained, but should be allowed•to state such facts as would be admissible in evidence." To have suffered this defendant to roam through the wide field of vulgar, erotic literature and obscene pictorial illustrations, and to parade before the court and country nude pictures, designed to excite passion, and lascivious and wanton articles taken from the daily press, would not only have been an abuse of the law under which this right is claimed, but would have been pandering to and encouraging the very evil which the statute then being enforced was designed

to suppress. No respectable, magistrate could for a moment tolerate a spectacle so gross and outrageous.

The record in this case does not disclose what pictures those were which it was proposed to exhibit, or what were the articles the defendant attempted to read. We cannot, therefore, judge whether they were relevant or proper. If such had been the fact, it should have been made to appear.

The court did right in prohibiting this trial from being made the medium for advertising to the public papers of the character which this defendant seems to have been interested in disseminating.

5. Every person is presumed to have intended the natural and legal consequences of his conduct, whether that conduct be *malum in se*, as we think this was, or *malum prohibitum*. There is no pretence that this defendant was unapprised of the law under which he is prosecuted. According to his own showing, he knew of its existence, and violated it for the express purpose, as he states, of making a test case. He was anxious to vindicate the character of this paper from the charges brought against it, and with that view, and that he might not fail in his object, and to insure a prosecution, he sought the chief of police and bestowed upon him copies of this paper. Surely he cannot complain now that he succeeded in accomplishing his design, or that the court in its charge did him injustice as to the intent with which he committed the act. That he was disappointed in the result, and that his experiment cost him more than he expected, are matters which it is not our province to review.

The sentence imposed is not such a thing as can be put into a motion for a new trial.

Judgment affirmed.