## SCHANE *v.* CITY OF ATLANTA.

Under a municipal ordinance which declares: "All pawnbrokers," etc., "shall furnish to the chief of police, or chief of detectives, a full and complete list each day of every article taken in pawn or bought by said dealers, giving a full description of the same," etc., and which provides a penalty for a refusal or failure "to furnish such list," a mere clerk in a pawnbroker's shop, who fails to report to the chief of police, or the chief of detectives, the purchase, in the pawn-shop, by the pawnbroker of a given article is not guilty of the offense defined by the ordinance, even though he may have been present at the time the article was bought and may have assisted the pawnbroker in its purchase, and though it may have been customary for him as clerk to make out such reports for his employer.

Argued November 19,—Decided December 11, 1906.

Certiorari. Before Judge Pendleton. Fulton superior court. October 1, 1906.

*Smith, Hammond & Smith,* for plaintiff in error.

*James L. Mayson* and *William P. Hill,* contra.

FISH, C. J. David Schane and Samuel Goldstein were separately charged, in the recorder's court of the City of Atlanta, with "failing to make proper reports as a pawnbroker, that is, failing to report the purchase of a double-barrel shotgun on June 25, 1906." The purport and intent of the charge was that the accused had violated section 1610 of the Code of the City of Atlanta, which section, so far as it applies to the present case, reads as follows: "All pawnbrokers, second-hand dealers, and auction houses shall furnish to the chief of police, or chief of detectives, a full and complete list each day of every article taken in pawn or bought by said dealers, giving a full description of the same," etc. "And any such dealer refusing or failing to furnish such list . . shall pay a fine of not more than two hundred dollars, or be imprisoned thirty days, or both, in the discretion of the court; and a conviction of any such pawnbroker or other dealer of a violation of this ordinance shall work an immediate revocation of the license of such

offender." The two cases were heard together, and, under the evidence submitted, the recorder, in each case, found the accused guilty and sentenced him to pay a fine of two hundred dollars and costs, and, in default of such payment, to work on the streets or public works of the city for thirty days. Schane carried his case by certiorari to the superior court, where the judgment of the recorder's court was affirmed; and he thereupon sued out a bill of exceptions, wherein he assigned error upon the overruling of the certiorari. In the petition for certiorari the judgment rendered by the recorder was alleged to be contrary to the evidence and without evidence to support it, and as being contrary to law, the petition averring that "there is no law authorizing or supporting a judgment finding the defendant guilty under this evidence, who is merely a clerk."

In our opinion, the petition for certiorari should have been sustained. The evidence wholly failed to show that Schane, at the time that he was charged to have committed the offense, was a pawnbroker. It showed that he was merely a clerk in the "Viaduct Pawn-Shop," of which one Rosenthal, who had recently died, had been the proprietor, and which, at the time of the alleged offense, was being conducted by Goldstein for his wife, who was the daughter and, according to his testimony, the sole heir of the deceased Rosenthal. It is true that Langford, a city detective, testified that "Goldstein and Schane run the Viaduct Pawn-Shop," but this evidently was a mere conclusion of his, for immediately thereafter he testified that he did not know who owned the shop, or whether Schane was a mere clerk in it. So his testimony on this point was really not at all in conflict with the testimony of Goldstein and the statement of the defendant, Schane, that Schane was simply a clerk in the pawn-shop. Goldstein, while testifying, upon being asked by the court, "who the proprietor of the Viaduct Pawn-Shop was," replied, "Mr. Rosenthal who was the proprietor had just died, and his (Goldstein's) wife was Mr. Rosenthal's daughter and sole heir; so he was taking charge of the store;" and when the court asked him "what this defendant, Schane, was doing there," answered "that this defendant was only a clerk." And the defendant Schane, in his statement, said that he had "been working for the Viaduct Pawn-Shop as a clerk on a salary, and nothing more, for the last six or seven months." The mere

fact, testified to by the detective, that Schane seemed to know more about the business than Goldstein and was generally the spokesman of the two when the detectives visited the shop, was not sufficient. to show that Schane was a proprietor or manager of the business. If Schane had been the clerk of the former proprietor, Rosenthal, who had just recently died, after whose death Goldstein had taken charge of the business, it was not unlikely that Schane, the clerk, should seem to know more about the business than Goldstein. It appeared from Schane's statement that he as clerk made out a report for his employer on the evening of the day the gun was purchased. ` The contention of the city attorney is, that although Schane was but a clerk in the pawn-shop, he was rightly convicted, because "in misdemeanors there are no principals," but "all who participate are equally guilty." We are unable to understand upon what theory, deducible from the evidence, counsel invokes this well established rule in reference to misdemeanors. It is true that the negro who sold Goldstein the gun testified that while Goldstein was talking to him about the gun, "he [Goldstein] called Schane to him and showed him the gun and asked Schane what he thought . of it, saying that Schane knew more about guns than he did." But even if Schane participated in the purchase of the gun, or advised Goldstein to buy it, and Goldstein failed to report the purchase to the police department of the city, as required by the municipal · ordinance, this would not make Schane a participant in the offense committed by Goldstein. For the offense consisted, not in the purchase of the gun by the pawnbroker, but in his failure to subsequently furnish a report of such purchase to the police department, as the ordinance required. The mere purchase of the gun by the pawnbroker was no offense; and even if it had been, the accused was not charged with having purchased the gun, or with having aided in its purchase. The purport of the charge against him was, that he had failed to discharge a duty imposed by the municipal ordinance, not upon him, but on the pawnbroker in whose service he was. There being no duty on him to report the purchase of the gun to the chief of police, or the chief of detectives, he did not violate the ordinance when he failed to do so, even though it may have been customary for him merely as a clerk to make out for his employer, the pawnbroker, the report required to be made by the latter under. the ordinance. Admitting that he could violate this ordi-

nance by advising or inducing Goldstein, the keeper of the pawn-shop, to make no report to the police department of the purchase in question, or by in some other way abetting Goldstein in a purpose on his part not to make such a report, there is nothing whatever in the evidence which even tends to establish his guilt upon such a theory. Judging from the evidence,' he seems to have been convicted upon the theory that, under the municipal ordinance in question, it was as much the duty of a clerk employed in a pawn-shop, who assisted or participated in a transaction wherein an article was taken in pawn or purchased by the pawnbroker, to furnish to the police department of the city a report of such purchase as it was the duty of the pawnbroker himself. The ordinance is not even susceptible of this construction; and even if it were, being penal in its nature, could not be so construed if another and more obvious construction could be placed upon it.

*Judgment reversed. All the Justices concur.*