23290.  HALL v. THE STATE.

DECIDED NOVEMBER 11, 1933.

*Casey Thigpen,* for plaintiff in error.
*Marvin L. Gross, solicitor-general,* contra.

MacINTYRE, J.  The special presentment in this case charges that on February 5, 1933, in Washington county, Georgia, Adeline Hall, "unlawfully and with force and arms, did knowingly send a letter to Lena May Harden, threatening to maim, wound, kill, and murder the said Lena May Harden."  The jury found the defendant guilty, and she excepts to the overruling of her demurrer to the indictment, and to the judgment overruling her motion for a new trial.

The first three grounds of the demurrer present the same contention, to wit, that the special presentment does not charge any offense against the laws of this State.  The fourth ground of the demurrer is that "the alleged threatening letter mentioned in the indictment is not copied and fully set out in said indictment; that the indictment does not fully and clearly put this defendant on notice as to the nature of the charge against her, and is therefore vague, indefinite, and uncertain."  Penal Code (1910), § 119, under which the presentment is drawn, reads:  "If any person shall knowingly send or deliver any letter or writing, threatening to accuse another of a crime, with intent to extort money, goods, chattels, or other valuable thing, or threatening to maim, wound, kill, or murder such person or any of his family, or to burn or otherwise destroy or injure his house, or other property real or personal,

though no money, goods, chattels, or other valuable thing be demanded, he shall be punished by imprisonment and labor in the penitentiary for any time not less than two years nor longer than five years."

The true test of the sufficiency of an indictment to withstand a general demurrer is: Can the defendant admit the charge as made and still be innocent? To ask this question in regard to the presentment in this case is to answer it in the negative; and we hold that the first three grounds of the demurrer are without merit. See *Newman* v. *State,* 63 *Ga.* 533, 534; *Dukes* v. *State,* 9 *Ga. App.* 537 (71 S. E. 921).

The fourth ground of the demurrer, complaining that the letter was not set out in the presentment, is in the nature of a special demurrer, and demands fuller consideration. "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this code, or so plainly that the nature of the offense charged may be easily understood by the jury." Penal Code (1910), § 954. Omitting its formal parts, the form given for indictments under this code section merely requires that they "state the offense, and the time and place of committing the same, with sufficient certainty." In *Gibson* v. *State,* 118 *Ga.* 29 (44 S. E. 811), the indictment charged the defendant with obstructing legal process (an award of a cow in a possessory warrant proceeding), but did not set out how the process was obstructed. One ground of the demurrer was that the indictment "did not set out the manner in which the process was obstructed." The Supreme Court held: "The demurrer was properly overruled. The indictment was more specific in charging the offense than is the Penal Code in defining it. The Penal Code, § 929, provides that an indictment shall be deemed sufficiently technical and correct when it states the offense in the terms and language of the code or so plainly that the nature of the offense charged may be easily understood by the jury. This section, however, was not 'designed to deny to one accused of crime the right to know enough of the particular facts constituting the alleged offense to be able to prepare for trial.' *Johnson* v. *State,* 90 *Ga.* 441 (16 S. E. 92). The indictment in the present case not only contained the terms of the code definition of the offense, but was otherwise sufficient." In State *v.* O'Mally, 48 Iowa, 501,

502, the court said: "Counsel for the defendant insist that the indictment is bad for the reason that, as it does not set out the threatening words used by the defendant, it alleges a legal conclusion. The language of the indictment is, that the defendant did 'wilfully and maliciously verbally threaten to kill and murder Zenana Statts and F. S. Wood.' This is not the allegation of a legal conclusion, but of the act of defendant, and is sufficient without setting out the words used. The words of the defendant were not the gist of the offense, which is found in the intention of the defendant to convey thereby a threat. The threat should be averred, and may be shown by the words used." In Glover v. People, 204 Ill. 170 (68 N. E. 464), the indictment was drawn under a statute which reads as follows: "Whoever, either verbally or by written or printed communication, maliciously and wilfully threatens to . . kill or murder another person, . . with intent thereby to extort any money, goods, chattels, or other valuable thing, shall be imprisoned in the penitentiary not less than one nor more than twenty years." In the opinion of the court it was said: "It is assigned as error that the court erred in overruling a motion to quash the third count of the indictment and in arrest of judgment. The count was substantially in the language of the statute creating the offense, and was sufficient. Section 6 of division 11 of the Criminal Code . . provides: 'Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury.' . . In Cannady v. People, 17 Ill. 158, it was said: 'Where statutes create offenses, indictments should contain proper and sufficient averments to show a violation of the law. . . Great niceties and strictness in pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge or make preparation for his defense for want of greater certainty or particularity in the charge. Beyond this, it tends more to the evasion than the investigation of the charge, and becomes rather a means of escaping punishment for crime than of defense against the accusation. . . It is, however, urged that the indictment is insufficient in this: that it does not set out the words constituting the threats. Such averment was unnecessary."

Next follows the quotation from the O'Mally case which is set out above.

In Bradfield v. State, 73 Texas Crim. 353 (166 S. W. 734), the charge was that the defendant "did then and there unlawfully send and deliver to Miss Alma Walder an anonymous letter, typewritten in the Spanish or Mexican language, which said letter, according to its words and tenor, reflects upon the chastity, virtue, good character and reputation of the said Miss Alma Walder, to whom said letter was sent and delivered and intended for." The indictment follows closely the wording of the statute upon which it is based. In that decision it was said: "Another contention of appellant is that the complaint and information are fatally defective in that they do not contain the said letter. In our opinion it was unnecessary to copy the letter in either the complaint or information." For a brief of decisions construing section 954 of the Penal Code (1910), supra, see Cook v. State, 22 Ga. App. 770, 773 (97 S. E. 264).

In the instant case the words of the defendant are not the gist of the offense, which is found in the intention of defendant to convey thereby a threat. The gist of the offense is the threat, and the threat which was the act of the defendant was sufficiently stated. The presentment sets out the time and place of the alleged offense and the parties involved therein, and follows closely the language of the statute. Furthermore, we are of the opinion that the presentment complies with the requirement that it state the offense "so plainly that the nature of the offense charged may be easily understood by the jury." We hold that the demurrer was not meritorious, and that the judge properly overruled it.

Special ground 2 of the motion for a new trial avers that a new trial should be granted "because the verdict of the jury and the judgment of the court are null and void, for the reason that the venue and jurisdiction of the alleged crime was not shown to be within the county of Washington and State of Georgia, nor was the time of the commission of the offense proved as alleged in the special presentment and within the statute of limitations." Lena May Harden testified: "I know Adeline Hall. I received this communication from her in Washington county, State of Georgia. I received this letter by hand and not by mail. My husband, Tom Harden, brought it to me." The statute inhibits the "sending or

delivering" of the letter or writing, and the presentment avers that the letter was sent to Lena May Harden in Washington county, Georgia. We are satisfied that the venue was proved. Under the Penal Code (1910), § 30, it is essential that the indictment be found "within four years next after the commission of the offense." It appears from the record that the bone of contention between the defendant and Lena May Harden was the latter's husband, Tom Harden. Referring to the time she "spent several nights down at Mr. Lyman Hodges' house," because she was afraid to go home on account of the defendant, Lena May Harden swore: "The time that I spent those nights at this gentlemen's house was before I received this letter, because she had been picking at me then. Adeline and I were not on good terms; we are not on good terms now. We have been at outs ever since me and my husband have been together; that has been two or three years." After testifying in substance that on several occasions Lena May Harden came to his house and said she was afraid to go home because "they were up at her house and threatened to kill" her, Mr. Lyman Hodges swore: "And on Sunday . . this Lena May Harden's husband came down there and tried to give her this letter, and she . . said she was scared to take it. And I told her to bring me the letter, . . and she took it and brought it to me, and I . . kept it." The record then recites: "The witness then reads the letter which is hereto attached." The witness further testified that in the presence of himself and A. W. Smith, the sheriff, and while in jail, the defendant "admitted writing it and told what was in it." We think it fairly appears from the evidence that the letter in question was delivered after the defendant and Lena May Harden had "been at outs;" that they had been "at outs" since Lena May Harden and her husband had been together; and that Lena May and her husband had been together "two or three years." We hold that there is no merit in special ground 2.

Special grounds 3 and 4 are abandoned.

Omitting some of the extremely scurrilous parts of the letter in question, we quote from it as follows: "Hello, Lena. . . I just mean to get you told that I am coming down this road every night next week. I am going to give you chance to law away and kill me every time you see me. I got plenty of damn 38's, and you are a damned S. O. B. . . Since you are telling lie, I parted you

all, I am damned sure going to take him. . . I give you till Wednesday night to leave here. If ever I lay eyes on you, you is mine. I will up this road today or tonight. I want you to know so that you can place yourself to kill me. I am damn sure not afraid. . . I am going to be with Tom. . . " There was ample evidence to show that the defendant sent the letter in question, and we are satisfied that the jury were warranted in concluding that the letter contained a threat to "maim, wound, kill, or murder" Lena May Harden. We hold that the evidence supports the verdict, and that for no reason assigned did the trial judge err in refusing to grant a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*