32546.   GORE *v.* THE STATE.

Decided July 16, 1949.

698

*Harris, Henson & Spence*, for plaintiff in error.

*Paul Webb, Solicitor-General, Carl Copeland, William Hall, C. O. Murphy*, contra.

GARDNER, J. ■ The contentions of both the defendant and the State are thoroughly and ably presented by counsel both for the defendant and for the State. Counsel for the defendant very clearly present the issues to be decided, which are: "1. Whether the allegations contained in the indictment charge the offense defined in the basic statute. 2. Whether the complaint was pled with sufficient particularity to put the accused upon notice of what he was compelled to defend. 3. Whether the court erred in rejecting certain evidence (ground 1 of the amended motion; ground 1 of the second amendment). 4. Whether the evidence was sufficient to sustain a conviction."

We will deal first with the contentions of the defendant. (a) General demurrer. Counsel for the defendant earnestly contend that the general demurrer should have been sustained. The basis of this argument is, that the section as set out above from the Code of 1933 was codified from the act of 1878-1879 (Ga. L. 1878-79, p. 163); that the said act named every means of disseminating obscenity known at the time of the passage of the act; that moving pictures were entirely unknown, and could not therefore have been in the contemplation of the General Assembly; that the act of March 28, 1935, merely changed the punishment for the offense defined in the act of 1878-1879; that the act of March 27, 1941, like the act of 1935, is an amendatory act wholly within the legislative scheme originating in the act of 1878-1879; that there is no broadening of the offense and no description of any device prohibited not mentioned in the basic statute; and that no act of the General Assembly has at any time mentioned the projection of films as a prohibited device to disseminate obscenity.

Counsel cite in this connection the case of *Sanders v. State*, 86 *Ga.* 717 (12 S. E. 1058), and call our attention to an excerpt from that decision as follows: "When a specific enumeration concludes with a general term, it is held to be limited to things of the same kind." Counsel then go on to give us the historical fact that motion pictures were first projected in 1889 by Thomas Edison, eleven years after the passage of the act of 1878-1879,

from which Code § 26-6301 was codified, and that it was not until 1903 that motion-picture projection as we know it today was conceived.

Counsel then proceed to call our attention to the case of Mc-Boyle v. United States, 283 U. S. 25 (51 Sup. Ct. 340, 75 L. ed. 816), Justice Holmes delivered the opinion for the Supreme Court. Involved in that case was a conviction of McBoyle for transporting from Illinois to Oklahoma an aeroplane that he knew to have been stolen. The Circuit Court of Appeals affirmed the conviction. Upon certiorari to the United States Supreme Court, the inferior court was reversed. The Supreme Court held that the criminal statute regulating the transportation between States of motor vehicles or any self-propelling vehicles not designed for running on rails, knowing the same to be stolen, did not apply to aeroplanes, but that in everyday speech "vehicles" called up a picture of vehicles moving on land. It is contended that the instant case should be reversed on the principle contained in that decision of the Supreme Court of the United States.

Counsel then call our attention to the case of *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523), wherein this court said: "It is contended that the act of the General Assembly of Georgia, regulating the use of automobiles, and the ordinance of the City of Atlanta, both of which it is alleged in the indictment the defendant was violating at the time of the homicide, are so indefinite and uncertain as to be incapable of enforcement. It is the duty of the judicial department, wherever possible, to construe an act of the legislative department so as to make it valid and binding and give due effect to all of its terms. Hence, a statute ought not to be held void for uncertainty if it is possible to give a reasonably particular construction to its terms, so as to make them capable of enforcement. But while this is true, the State can not make an act penal without defining the act in terms sufficiently clear for any person to understand that in performing the act he is guilty of a violation of a statute. The maxim that 'ignorance of the law is no excuse for crime' is founded upon the theory that the citizen may ascertain the law and know that the act which he is performing has been condemned. If it is impossible for him to ascertain that a given act

has been made penal, it would be manifestly unfair for the State to punish him for a commission of the act. If the law is of such doubtful construction, and describes the act denominated as a crime in terms so general and indeterminate, as to make the question of criminality dependent upon the idiosyncrasies of individuals who may happen to constitute the court and jury, and . of such a nature that honest and intelligent men are unable to ascertain what particular act is condemned by the State, the law is incapable of enforcement and will be held to be null and void.

"The foregoing proposition is supported by the authorities with practical unanimity. Reference to a few of the adjudicated cases will serve to illustrate the application of the rule above stated. In Ex parte Jackson, 45 Ark. 158, it was held that a statute making it a misdemeanor to 'commit any act injurious to the public health or public morals, or the perversion or obstruction of public justice, or the due administration of the law,' is void for uncertainty. . . The same rule has been announced with reference to a statute which undertook to make penal the combining of two or more persons for the purpose of 'mob violence' the statute not undertaking to define or designate what acts should be deemed or considered mob violence. Augustine v. State, 41 Tex. Cr. R. 59, 73 (52 S. W. 77, 96 Am. St. Rep. 765). The Supreme Court of the United States has said that 'laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. Before a man can be punished, his case must be plainly and unmistakably within the statute.' U. S. v. Brewer, 139 U. S. 278, 280 (11 Sup. Ct. 538, 35 L. ed. 190). A statute of Indiana undertook to make it unlawful for any person to haul over any of the turnpikes or gravel roads during certain conditions of the weather, on a narrow-tired wagon, a load of more than 2,000 pounds, or on a broad-tired wagon a load of more than 2,500 pounds. This statute was held to be too uncertain and too indefinite for the reason that the statute did not sufficiently describe a narrow-tired wagon and a broad-tired wagon. Cook v. State, 26 Ind. App. 278 (59 N. E. 489). The Supreme Court of Wisconsin has thus announced the rule: 'A law which takes one's property or liberty as a penalty for an offense must

so clearly define the acts on which the penalty is denounced that no ordinary person can fail to understand his duty and the departure therefrom which the law attempts to make criminal, since one can not be said to wilfully violate a statute which is so contradictory or blind that he must guess what his duty is thereunder'."

Counsel then call our attention to the principle that penal statutes must be strictly construed and their terms may not be extended, and in support of this contention counsel cite the following cases: *Schane* v. *Atlanta*, 127 *Ga.* 36 (56 S. E. 91); *McAllister* v. *State*, 122 *Ga.* 744 (2) (50 S. E. 921); *Thorn* v. *State*, 13 *Ga. App.* 10 (78 S. E. 853); *Pritchett* v. *State*, 51 *Ga. App.* 228.

Then the ejusdem generis rule, to the effect that general terms following specific terms are confined to the same kind, is argued. This principle is set forth in the Code, § 102-102. It is true that if the accused can admit all accusations of the indictment and still be innocent of the offense charged, the indictment is defective. Every indictment must be complete within itself, and charge a crime, and every substantial element of the offense alleged to be committed. This principle is supported by the following authorities: *Stoner* v. *State*, 5 *Ga. App.* 716; *Dukes* v. *State*, 9 *Ga. App.* 537; *Mathews* v. *State*, 16 *Ga. App.* 312; *Hall* v. *State*, 47 *Ga. App.* 833; *Pruitt* v. *State*, 102 *Ga.* 688; *Glover* v. *State*, 126 *Ga.* 594. Counsel contend that the crime alleged in the indictment in the instant case was never intended by the legislative enactment codified in the Code, § 26-6301, supra.

(b) Counsel insist that the special demurrers are good. They carry with them their own argument.

(c) Counsel contend that the court erred in overruling the motion for a new trial on the general grounds, and that the evidence and a view of the picture will reveal a total failure to prove the material allegations in the indictment.

(d) The next contention is that the first amendment to the motion for a new trial should have been sustained, and that this pertained to a rejecture by the court, of a photograph printed in a magazine of general circulation through the United States mails in Fulton County, being the identical pictures alleged to have been exhibited by this plaintiff. It is contended that the plaintiff was entitled to the evidence, particularly under

the sole objection to the introduction of the magazine pictures, as follows, "What might or might not be in some other publication or magazine is irrelevant and immaterial and has nothing to do with this case."

The second amendment to the motion for a new trial complains that the court rejected evidence that the identical picture, "The Valley of the Nude" was being advertised and exhibited by the Cascade Heights Theatre during the same week. This evidence was offered to show the prejudice and bias of the prosecutor.

The above are substantially the contentions of the defendant, and will be dealt with further in the second division of this opinion.

The contention of the State is, of course, that the general and special demurrers were properly overruled. We think that these contentions are sound. It will be observed that Code § 26-6301 makes penal the possession or exhibition of any indecent or obscene photograph, picture; or article of indecent and obscene use. It is true that the section of the Code under which the instant indictment was founded is a codification of the acts of 1878-1879 (Ga. L. 1878-79, p. 163), and that the acts of 1935 (Ga. L. 1935, p. 158), and the acts of 1941 (Ga. L. 1941, p. 358), were amendments to the original act of 1878-1879, and it is true also that motion-picture projection was unknown in 1878 and for many years thereafter. And it is perhaps true that the General Assembly in 1878-1879 did not have in mind photographs and pictures as now projected and exhibited in moving-picture theaters when the basic act was adopted. But the General Assembly on February 14, 1935, passed an act adopting the Code of 1933 as published and proclaimed by the Governor. The adoption by the legislature of the Code of 1933 amounted to a re-enactment of each section thereof as contemporary statutes. See *State of Georgia v. Camp,* 189 *Ga.* 209 (2) (6 S. E. 2d, 299); *Martin* v. *State,* 75 *Ga. App.* 807 (44 S. E. 2d, 562); *Central of Georgia Ry. Co.* v. *State,* 104 *Ga.* 831 (2) (31 S. E. 531); *Davis* v. *Davison,* 160 *Ga.* 545, 546 (128 S. E. 743); *Daniel* v. *Citizens & Southern Nat. Bank,* 182 *Ga.* 384, 395 (185 S. E. 696); *Stevens* v. *Duncan,* 189 *Ga.* 730 (7 S. E. 2d, 745). In the act of 1941 (Ga. L. 1941, pp. 358, 360), it is stated: "Nothing in this act

shall be construed to alter or repeal Section 26-6301 of the Code of 1933. . . The General Assembly of the State of Georgia hereby expresses its intention that said section shall stand and continue as the law of the State of Georgia, and that the present enactment shall only 'be supplementary thereto." It will thus be observed that, even though the legislature of 1878-1879 when using the words "photographs and pictures" did not have in mind photographs and pictures as alleged in the indictment in the instant case and supported by the evidence, the General Assembly of 1935 adopting the Code of 1933 and the General Assembly of 1941 certainly knew and intended that Code § 26-6301 should apply to moving pictures and photographs as we know them today.

The jury passed upon the facts in this case. The publication is to be judged in the light of present-day standards and not by any future standard that might prevail. In *Holcombe* v. *State*, 5 *Ga. App.* 47, 50 (62 S. E. 647), this court said: "We can not adopt the suggestion of counsel that it (Code § 26-6303) is aimed alone at, language suggestive of sexual intercourse, or tending to excite lewdness or to debauch the public morals. The word 'obscene' means 'offensive to the senses, repulsive, disgusting, foul, filthy, offensive to modesty or decency, impure, unchaste, indecent, lewd'. Century Dictionary. We think that the phrase 'obscene and vulgar language,' as used in the statute, includes any foul words which would reasonably offend the sense of modesty and decency of the woman or women . . in whose presence the words were spoken, under all the circumstances of the case. It would be absurd to tolerate the suggestion that to speak of a woman's rump in a loose or jocular connection would not be offensive to the modesty and decency of the ordinary woman. . . Any gross reference to the private parts of a woman, or to any of the surrounding portions of her person, is, by common consent of mankind, indecent and shocking to feminine modesty. . . We recognize that real modesty, and not prudery, and not pruriency, is the object of the law's protection." Also, in *Redd* v. *State*, 7 *Ga. App.* 575 (3, 4) (67 S. E. 709), the court said: "Whether an act is decent or indecent depends upon the time, the place, and all the circumstances surrounding its commission, including the intention, actual or im-

plied, of the actor. When, by general consensus of the people and practical unanimity of public opinion, an act tending to debauch the morals is understood to be offensive to the common instincts of decency if done under particular circumstances, that act when so done is, in contemplation of law, a notorious act of indecency." And at page 582 of the same opinion, the court points out that whether an act is indecent or obscene is "according to the prevailing social standards in this State, and according to the notions of decency and indecency now commonly recognized among our people."

In *Montross* v. *State*, 72 *Ga.* 261 (53 Am. R. 840), the court said: "A glance at the pictures with which the papers sent up in the record are illustrated, and a slight examination of the printed matter, will be sufficient to fix the character of this publication as indecent, with an unmistakable tendency to vitiate the public taste and to debauch the public morals." This court, in *Kitchens* v. *State*, 78 *Ga. App.* 795 (52 S. E. 2d, 564), said: "(a) Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the Code or so plainly that the nature of the charge may be easily understood by the jury. (b) The act of appearing in a public place on the part of a man dressed only in his underwear, with a nude woman, is, by general consensus of the people and practical unanimity of public opinion, an act tending to debauch the morals, and is understood to be offensive to the common instincts of decency. Such an act, therefore, is a notorious act of indecency, and the indictment charging it alleges a violation of Code § 26-6101." The picture, "The Valley of the Nude," pictured a place where numerous men, women, and children were playing and living in the nude, exposing their persons to one another, eating, playing, sleeping together—naked. In our opinion it was in violation of the statute under which the indictment was drawn and the evidence amply authorized the conviction under the general grounds.

■ Special ground 1 assigns error on the excluding from the consideration of the jury of an exhibit of the defendant, which consisted of documents in magazines circulated through the mails and newsstands in Fulton County, the pictures in the magazines being the same or similar to the pictures shown on the moving-

picture screen in "The Valley of the Nude." And special ground 2 assigns error because the court refused to allow evidence offered by the defendant that other moving-picture theaters were exhibiting the same picture which the defendant was accused of illegally showing. The Supreme Court, in *Montross* v. *State*, (headnote 4), supra, said: "Where a defendant was indicted for giving away an indecent pictorial newspaper tending to debauch the public morals, with intent to circulate the same, when he sought in his statement to read to the jury an article in another newspaper, and to exhibit to them pictures publicly displayed elsewhere in the city where the trial occurred . . there was no error on the part of the court in interrupting the accused, and prohibiting him from so doing." And the court further said, on pp. 267 and 268: "As well might the keeper of a lewd and disorderly house, or the proprietor of a gaming house or tables, claim that he had not violated the law, when called upon to answer for his offense, because others indulged in these nefarious practices openly and with impunity and were not prosecuted for their offenses against public order and decency. . . No respectable magistrate could for a moment tolerate a spectacle so gross and outrageous." It thus appears that the court did not commit error in refusing the evidence proffered by the defendant.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed.* *MacIntyre, P. J., and Townsend, J., concur.*