A97A2038. MORETON ROLLESTON, JR. LIVING TRUST
v. GLYNN COUNTY BOARD OF TAX ASSESSORS.
(491 SE2d 812)

ELDRIDGE, Judge.

Appellant Moreton Rolleston, Jr. Living Trust owned three properties in Glynn County, Georgia: (1) Cottage No. 303, Lots 1072, 1073-1071, 05-00166 0011-10 014-004, Sea Island, Georgia ("Tract One"); (2) Vacant Lot, Lot 1, 2 Blk 65, 05-00176 0011-10 019-001, Sea Island, Georgia ("Tract Two"); and (3) 2225 Bruce Drive, 04-02972, S001-00 006-008, 19 & 20 Bl 27, East Beach, St. Simons Island, Georgia ("Tract Three"). In 1995, appellee Glynn County Board of Tax Assessors ("Assessors") reassessed the property by raising the fair market value ("FMV") as follows: (1) Tract One from $839,776 to $1,146,375; and (2) Tract Two from $235,000 to $279,000; the raise in FMV of Tract Three was subsequently settled and is not in dispute. Within 45 days of the date of assessment by the Assessors, on September 11, 1995, appellant filed a notice of appeal pursuant to OCGA § 48-5-311 (e) (2). The Assessors did not respond to appellant's notice

of appeal for over 180 days, which under OCGA § 48-5-311 (e) (3), should automatically cause the appeals to be referred to the Joint Board of Equalization for hearing upon such failure by the Assessors; this referral has never been made by the Assessors. The Board of Equalization failed to set a hearing date within 15 days of the receipt of the notice of appeal as required by OCGA § 48-5-311 (e) (6) (A) and failed to hold a hearing within 30 days of the notification of the appeal, because no notification was given to them by the Assessors under OCGA § 48-5-311 (e) (6) (A) and (B).

On June 26, 1996, in Civil Action 93-00359, Superior Court of Glynn County, Gary Moore, Glynn County Attorney, acting on behalf of Glynn County Assessors, entered into a settlement with appellant of a prior tax appeal over reassessments of the property. The settlement was made and entered as a consent order and judgment that established the FMV of Tract One at $839,776 and of Tract Two at $235,000, for the ad valorem taxable years of 1992, 1993, and 1994.

On June 17, 1996, appellant filed a complaint against the Assessors in the Superior Court of Glynn County, praying "[t]hat this Court enter an Order declaring that the increase in fair market value of Plaintiff's property for the years 1995 and 1996 be declared invalid." The basis for declaring the reassessments invalid is "[t]he failures of the Assessors and the Board of Equalization [of Glynn County] to follow procedures set forth hereinabove nullifies the increase in fair market values of Tracts One, Two and Three over and above the fair market values established for said Tracts for the tax years [1995 and 1996]." The Assessors answered on August 1, 1996. On August 12, 1996, appellant moved for summary judgment. The Assessors filed their motion for summary judgment on September 9, 1996.

On January 22, 1997, the trial court dismissed the complaint for lack of jurisdiction, finding "that it is without jurisdiction to entertain such motions. The Georgia Supreme Court has held in a number of cases that 'as a matter of policy and judicial economy, a Superior Court should not exercise its equitable jurisdiction in tax assessment cases to address issues of valuation, taxability, uniformity, constitutionality, including the constitutionality of appraisal methods, and procedure, which may be reviewed via statutory appeal to a county board of equalization pursuant to OCGA § 48-5-311.'" Appeal was filed to the Supreme Court timely. By order of the Supreme Court of Georgia, this appeal was transferred to this Court.

1. Appellant's first enumeration of error is that the trial court erred in dismissing the complaint.

Appellant filed a complaint asking the trial court for declaratory relief, i.e., to find that the reassessments by the Assessors for the

years 1995 and 1996 were invalid for failure to follow OCGA § 48-5-311 (e) (2), (3), and (6) (A) and (B). While the complaint does not specifically invoke OCGA § 9-4-1 et seq., the complaint sets forth a case of uncertainty, where declaratory judgment is sought to declare the assessments for 1995 and 1996 invalid, because the Assessors have failed or refused to act under a statutory mandate that would otherwise give appellant the right to appeal to superior court.

Declaratory judgments are used to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and this chapter is to be liberally construed and administered." OCGA § 9-4-1; *Burgess v. Burgess*, 210 Ga. 380, 382-383 (2) (80 SE2d 280) (1954); *Calvary Independent Baptist Church v. City of Rome*, 208 Ga. 312, 315 (4) (66 SE2d 726) (1951); *City of Brunswick v. Anderson*, 204 Ga. 515 (1) (50 SE2d 337) (1948). The purpose of declaratory relief is to permit a determination of the obligations of the parties before such obligations are repudiated or rights are violated. *Rowan v. Herring*, 214 Ga. 370, 372-373 (105 SE2d 29) (1958). The goal of declaratory judgment is not to delay the trial of a case in which rights have already vested, but to guide the parties and prevent uncertainty and insecurity with respect to the propriety of some future act or conduct in order not to jeopardize their interests. *Pendleton v. City of Atlanta*, 236 Ga. 479 (1) (224 SE2d 357) (1976). In the case sub judice, appellant is uncertain as to whether he must continue to follow the statutory appeal procedure under OCGA § 48-5-311 (e) in order to contest the reassessment of his property, or whether such reassessment is void and can be ignored, because the Assessors failed or refused to act under the statutory mandate.

Under OCGA § 9-4-3 (a), "[f]urther plenary relief, legal . . . , including [legal injunction under OCGA § 9-4-3 (b) and] mandamus . . . , may be sought in a petition seeking declaratory judgment, and in such case, the action shall be governed as to process, service, and procedure by Code Section 9-4-5. In all such cases, the court shall award to the petitioning party such relief as the pleadings and evidence may show him to be entitled; and the failure of the petition to state a cause of action for declaratory relief shall not affect the right of the party to any other relief, legal or equitable, to which he may be entitled."

Even if no other relief is set forth in the appellant's complaint, it appears to have set forth the elements for a mandamus to issue against the Assessors to compel them to do what they are mandated to do, within certain time parameters. OCGA § 48-5-311 (e). "All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance, if there is no other specific legal remedy

for the legal rights." OCGA § 9-6-20; *Wofford Oil Co. of Ga. v. City of Calhoun*, 183 Ga. 511 (189 SE 5) (1936). Mandamus is the remedy for official inaction. *Coastal Svc. v. Jackson*, 223 Ga. 238 (154 SE2d 365) (1967); *Touchton v. Echols County*, 211 Ga. 85 (84 SE2d 81) (1954). Here, the acts of the Assessors in transmitting the notice of appeal to the Board of Equalization is purely ministerial and requires no exercise of discretion after the passage of 180 days without action on their part. *Anderson v. McMurry*, 217 Ga. 145 (121 SE2d 22) (1961). Under the plain language of OCGA § 48-5-311 (e), appellant has a legal right to such procedure. In fact, the trial court correctly held that appellant has no right to equitable relief, only relief under OCGA § 48-5-311 (e). *City of Atlanta v. North by Northwest Civic Assn.*, 262 Ga. 531, 535 (3) (422 SE2d 651) (1992).

Under Ga. Const. 1983, Art. VI, Sec. I, Par. IV, and Art. VI, Sec. IV, Par. I, the Superior Court of Glynn County has jurisdiction over both declaratory actions and petitions for writs of mandamus. See also OCGA § 9-4-5. Therefore, the trial court erred in finding that it lacked jurisdiction as it had jurisdiction at law to afford the relief prayed for by declaratory judgment. The court also had equity jurisdiction, but should exercise judicial restraint in tax cases, under certain circumstances. *City of Atlanta v. North by Northwest Civic Assn.*, supra at 535; *Tax Assessors of Gordon County v. Chitwood*, 235 Ga. 147, 153-154 (218 SE2d 759) (1975); *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208 (367 SE2d 43) (1988). However, appellant did not bring this as an action in equity, and it appears that other possible relief exists, either in declaratory judgment and/or writ of mandamus, which the trial court has not addressed on the merits. *Fulton County Bd. of Tax Assessors v. Jones*, 264 Ga. 828 (452 SE2d 99) (1995). Therefore, the trial court's dismissal for lack of jurisdiction is reversed, and the case is remanded for further consideration not inconsistent with this opinion.

2. Appellant's second enumeration of error is that the trial court dismissed the complaint seeking the declaration that the Assessors' reassessment of the property in 1995 and 1996 was invalid under OCGA § 48-5-299 (c), because in a prior appeal of a reassessment for 1992, 1993, and 1994, a consent order was issued fixing the FMV, and the Assessors were without power to reassess the property for two years under such order in 1995 and 1996, absent a showing that the reassessment came within an exception.

Appellant failed to raise this issue in the court below or to perfect the record by putting the consent order in evidence; however, on remand these issues and the construction of OCGA § 48-5-299 (c) must be dealt with in the declaratory judgment action, because proof of the consent order of the superior court on a tax appeal setting FMV for 1992, 1993, and 1994, and establishing the reassessment

values for 1992, 1993, and 1994, brings the 1995 and 1996 reassessments into the two-year period of prohibited reassessment. Thus, unless the Assessors can demonstrate an exception under OCGA § 48-5-299 (c), the Assessors acted without authority to reassess this property during the years 1995 and 1996. If appellant prevails on these issues, then the 1995 and 1996 reassessments are illegal and void ab initio, and appellant is entitled to a declaratory judgment to that effect and to such ancillary relief as is necessary to enforce the judgment. Otherwise, the trial court must decide the issues presented in Division 1.

Subsection (c) of OCGA § 48-5-299 was added by Ga. L. 1994, p. 786, § 1. The title of the amendment is "Revenue—Ad Valorem Taxes; Realty; Valuation by Board of Equalization or Superior Court; Investigation Required Before Change for Two Years," which indicates that an "Investigation [of the subject property is] required before change [in reassessments established by the Board of Equalization or Superior Court] for two years." The caption of the act, which describes the content and purpose of the amendment as notice to the voting legislators, states: "To amend Code Section 48-5-299 of the Official Code of Georgia Annotated, relating to ascertainment and assessment duties of county boards of tax assessors, *so as to provide for conditions under which valuations established or decisions rendered on certain appeals can be changed by such board*; to provide an effective date; *to provide for applicability*; to repeal conflicting laws; and for other purposes." (Emphasis supplied.)

Thus, the title and caption indicate that the intent of the General Assembly was to limit reassessment of property for two years, except under certain conditions, after a FMV determination has been made on appeal by either the county board of equalization or the superior court. The reason for such change is that some county tax assessors, at the mandate of the law, and the State Revenue Commissioner, who annually must approve the county tax digests, have reassessed property upward each year, even though the county tax assessors compromise, settle, or lose appeals as to such FMV before boards of equalization or superior court, and the assessors have reasserted such same reassessment over and over in subsequent years. This is the "salami slice" approach to reassessment, one small slice at a time; this slicing away at the whole reassessment, even though the assessors may lose most of what they reassess on appeal, get a small reassessment each time, or sooner or later the property owner either will miss a filing deadline for appeal or gives up the fight without an appeal. This approach is costly to the property owner in legal fees, litigation costs, and time. Far worse, it appears to the property owner as a hopeless and endless battle with government to take more taxes than are owed. Therefore, it is little wonder that the General Assem-

bly intended to afford the property owner some relief after a tax appeal, no matter the outcome. The plain and unambiguous language of the amendment grants meaningful tax relief from repeated annual reassessments by the assessors when there has been an appeal, made simply to raise revenue, without the county commissioners, school board, or municipal council having to take a politically unpopular action to increase the millage rate.

Such plain and unequivocal language of a statute is not subject to judicial construction. See OCGA § 1-3-1 (a), (b); *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970). Further, revenue statutes are to be construed liberally in favor of the property owner and strongly against the taxing authority. *Telecom\*USA v. Collins*, 260 Ga. 362, 364 (393 SE2d 235) (1990); *Collins v. American Tel. &c. Co.*, 219 Ga. App. 196, 197 (1) (464 SE2d 642) (1995); *Seaboard Coast Line R. Co. v. Blackmon*, 129 Ga. App. 342, 344 (199 SE2d 581) (1973).

The language of OCGA § 48-5-299 (c) states plainly that "[r]eal property, the value of which was established by an appeal in any year, . . . may not be changed by the board of tax assessors during such two years for the *sole purpose of changing the valuation established or decision rendered in an appeal to the board of equalization or superior court*." (Emphasis supplied.) The first exception to this general tax relief is that, where the property owner returns the property at a "different value," either upward or downward, the tax assessor may reassess the property during the two-year period. "[S]ole purpose of changing the valuation established or decision rendered in an appeal to the board of equalization or superior court" provides the second exception, which would be either sale of the property or a reassessment of a general area or an entire county-wide reassessment. Both of these exceptions are limited in application by the specific conditions which also must be satisfied for the reassessment to be exempted from the general prohibition. "In such cases [of exception to the prohibition against reassessment], before changing such value or decision, the board of assessors shall *first conduct an investigation into factors currently affecting the fair market value*. The investigation necessary shall include, but not be limited to, *a visual on-site inspection of the property to ascertain if there have been any additions, deletions, or improvements to such property or the occurrence of other factors that might affect the current fair market value* and a review to determine if there are any errors in the description and characterization of such property in the files and records of the board of tax assessors." (Emphasis supplied.) OCGA § 48-5-299 (c).

If the property or tax records reflect an incorrect area of land or past improvements to the property have been erroneously indicated in the tax records, then such error can be corrected and the property

reassessed, because any prior assessment was based upon error which may have affected the FMV. Likewise, the nature, use, and character of the property may also be in error and permit a reassessment to correct such error.

A generalized factoring upward or downward of all real property in a county is excluded, as is a county-wide reassessment, unless the subject property also had a specific investigation that *found certain factors to have changed*. OCGA § 48-5-299 (c). The reason that both cannot provide a basis for reassessment is that the appeals process determined the specific FMV of the subject property, while a factoring mandated by the Revenue Commissioner or a county-wide reassessment is for the purposes of general equalization of all property values only and does not take into account the actual FMV of the subject property as determined on appeal or the prohibition against reassessment for two years under OCGA § 48-5-299 (c).

The reassessment of the subject property requires a change in such factors to be investigated specifically as to how the factors affect the FMV of the subject property as a condition precedent to reassessment. Under OCGA § 48-5-299 (c), such factors are stated as: (1) *additions to improved realty*; (2) *deletions from improved realty*; (3) *improvements to the property*; and (4) *"the occurrence of other factors that might affect the current fair market value."* (Emphasis supplied.)

What constitutes "the occurrence of other factors that might affect the current fair market value" lacks clarity and is open to different interpretations so that statutory construction is necessary. *Frazier v. Southern R. Co.*, 200 Ga. 590, 593 (2) (37 SE2d 774) (1946); *Thompson v. Ga. Power Co.*, 73 Ga. App. 587, 597 (37 SE2d 622) (1946). The cardinal rule of statutory construction is to find the legislative intent and to effectuate such intent. *Miller v. Ga. Ports Auth.*, 266 Ga. 586, 587 (470 SE2d 426) (1996); *City of Roswell v. City of Atlanta*, 261 Ga. 657 (1) (410 SE2d 28) (1991); *Mullins v. First Gen. Ins. Co.*, 253 Ga. 486, 487 (322 SE2d 265) (1984); *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981); *Lamons v. Yarbrough*, 206 Ga. 50, 55 (1) (55 SE2d 551) (1949).

The General Assembly must be presumed to have enacted this amendment with full knowledge of the tax laws, the application of such reassessments every year after tax appeals, and the hardships such action by county assessors may cause to the property owner. Therefore, it seems apparent that the General Assembly intended to give meaningful tax relief from reassessment following an appeal for the two years after which the appeal fixed the FMV, unless some *significant* factors cause the FMV to *substantially change* during such time period. Obviously, the change contemplated by the statute, which would permit reassessment, must be *substantial*; otherwise, the amendment is rendered meaningless because normal market

forces, in most areas of the State, are always changing FMV in small incremental percentages, except in the rare circumstance of economic stagnation. This Court must construe the statute to have a logical meaning in harmony with existing law, and not to create an absurd result with regard to the existing law and the problem that the General Assembly sought to correct by enactment. *State of Ga. v. Davis*, 246 Ga. 761 (1) (272 SE2d 721) (1980); *McPherson v. City of Dawson*, 221 Ga. 861, 862 (148 SE2d 298) (1966); *Sale v. Leachman*, 218 Ga. 834, 836 (1) (131 SE2d 185) (1963); *Wigley v. Hambrick*, 193 Ga. App. 903, 905 (4) (389 SE2d 763) (1989). Therefore, the fourth factor, "occurrence of factors that might affect the current [FMV]," must be specifically related to the subject property, and not a mere general rise in area or county-wide real estate values. Moreover, the other three specific factors, as well as the correction of errors, deal only with the subject property; therefore, the fourth factor must also relate directly to the subject property.

For "the occurrence of other factors that might affect the current fair market value" to mean general market forces would render the amendment meaningless when inflation or deflation exists, because some change in the real estate market always exists. Such tax relief would be an illusion that the General Assembly did not intend; this amendment was intended to afford some short period of relief from reassessment absent an exception. Thus, the rule of noscitur a sociis applies, i.e., the precise meaning of words are to be derived from other associated words so that the words cannot be separated without impairing or destroying the evident sense the words were designed to convey. Since the General Assembly intended to have a catchall category of the same nature as the foregoing three specific factors, this fourth factor was created to avoid a limited group of factors and to cover unforeseen similar factors that could substantially affect FMV. See *Mott v. Central R.*, 70 Ga. 680, 683-684 (1883); see also *McKenzie v. Seaboard System R.*, 173 Ga. App. 402, 404 (1) (326 SE2d 502) (1985); *Royal Indem. Co. v. Agnew*, 66 Ga. App. 377, 378-380 (18 SE2d 57) (1941). Likewise, the rule ejusdem generis applies to reach the same result, where the effect of a general term following specific terms confines the general term in its meaning to the specific terms; thus, the general catchall factor is limited in its meaning to the same kind of factors as the specific factors listed before it. *Independent Ins. Agents of Ga. v. Dept. of Banking &c. of Ga.*, 248 Ga. 787, 789 (285 SE2d 535) (1982); *Ga. Bd. of Chiropractic Examiners v. Ball*, 224 Ga. 85, 89 (1) (160 SE2d 340) (1968); *Jenkins v. Jones*, 209 Ga. 758, 761 (1) (75 SE2d 815) (1953); *Beck v. Wade*, 100 Ga. App. 79, 82 (1) (110 SE2d 43) (1959); *Gore v. State*, 79 Ga. App. 696, 704 (1) (54 SE2d 669) (1949); *McGee v. Bennett*, 72 Ga. App. 271 (1), 272 (33 SE2d 577) (1945).

The meaning of the phrase "the occurrence of other factors that might affect the current fair market value" then can be determined from analysis of the three specific factors directly impacting the value of the subject property and "affecting fair market value." Such factors "affecting fair market value" during the two-year period would include: (1) a sale of truly comparable property in close proximity, which sales price must reflect a *substantial* change in FMV over the appeal valuation of FMV of the subject property, such as to cause a substantial increase in the subject property; (2) construction of highways or other public improvements in close proximity; (3) rezoning of the subject property or other property in close proximity; (4) development, subdivision, or improvement of adjacent property; (5) a public or private nuisance effecting a change in the subject property, as reflected in the market; (6) change in the flood plain designation or other substantial change in the exercise of police powers affecting use of the subject property; (7) a natural or man-made substantial change in the surrounding property by disaster or otherwise; or (8) other similar factors which *directly and substantially affect the FMV of the subject property during such two-year period.*

Factors that occur prior to the two-year period are subsumed to have already affected the FMV as determined specifically as to the subject property by the board of equalization or the superior court on appeal and cannot be redetermined, absent a showing of error or fraud in such reassessment. Thus, reassessment to avoid disparate treatment of other property valuations after an area or county-wide reassessment will not satisfy the specific factors, because the earlier reassessment appealed from has already determined the subject property's FMV in the county. To construe the statutory language to permit a general reassessment, despite the specific prohibition against reassessment for a period of two years, absent the presence of an exception, would make the legislature's amendment meaningless, as if never enacted, and would reach an absurd result. Thus, the general increase in FMV of either the subject property or surrounding property cannot serve as a catchall factor, absent the presence of one or more of the foregoing three factors or other similar specific factors. *Sirmans v. Sirmans*, 222 Ga. 202, 204 (149 SE2d 101) (1966); see also *Lamons v. Yarbrough*, supra.

Furthermore, the intent of the General Assembly can be derived from the caption of the act; the caption contains the General Assembly's own interpretation of the purpose and scope of the act in a summary form, which is consistent with the foregoing interpretation. *Copher v. Mackey*, 220 Ga. App. 43, 45 (5) (467 SE2d 362) (1996); *Wilson v. Miles*, 218 Ga. App. 806, 808-809 (3) (463 SE2d 381) (1995); *Sovereign Camp Woodmen of the World v. Beard*, 26 Ga. App. 130, 131 (105 SE 629) (1921).

The case sub judice is remanded for determination of petition for declaratory judgment not inconsistent with this opinion.

*Judgment reversed and remanded for further determination. Birdsong, P. J., and Ruffin, J., concur in judgment only.*

DECIDED AUGUST 22, 1997 —
RECONSIDERATION DENIED SEPTEMBER 4, 1997 — 

*Moreton Rolleston, Jr.*, for appellant.

*Whelchel, Brown, Readdick & Bumgartner, Terry L. Readdick, Gregory T. Carter, W. Gary Moore*, for appellee.