27634. HEAD, commissioner, *v.* McKENNEY.

DECIDED NOVEMBER 30, 1939. REHEARING DENIED DECEMBER 20, 1939.

Ellis G. Arnall, attorney-general, Herschel E. Smith, Marshall L. Allison, assistant attorneys-general, for plaintiff.

Orville A. Park, Orville A. Park Jr., for defendant.

BROYLES, C. J.   The bill of exceptions recites that on June 16, 1936, an execution issued on June 12, 1936, by the State Revenue Commission of Georgia against R. L. McKenney, for income taxes due the State for the year ending December 31, 1930, was levied on certain property of McKenney; that McKenney filed an affidavit of illegality in which he alleged that the execution was illegally issued and was proceeding illegally because the assessment for said taxes having been made in 1936 was barred by the statute of limitations; furthermore, that while McKenney had paid the United States $7603.73 for additional income taxes for the year 1930, that amount was paid under a compromise settlement, and the Revenue Commission of Georgia could not legally make an assessment against McKenney for additional income taxes, due the State for that year, of one third of the amount paid to the United States, such assessment being based on the redetermination of the Federal authorities, and the State Revenue Commission having no right to delegate to the Federal authorities the power of assessing taxes on citizens of Georgia for taxes due the State; nor has it any right to accept as the amount due taxes paid under protest and as a result of a compromise of the disputed liability, it being the duty of the commission to make its own assessment and its own determination of the amount of taxes due, based upon the facts found by it.

A general demurrer to the affidavit of illegality was overruled and exception was taken to that judgment.   After the introduction of stipulated evidence the court directed a verdict in favor of the affidavit of illegality.   A motion for new trial was overruled and that judgment was assigned as error.

The sole contentions of the defendant in error, as stated in the brief of his counsel, are as follows: "1. The claim for an additional amount is barred by the statute of limitations.   2. The State revenue authorities have no authority to collect an additional amount where they base their claim upon one third of an amount paid the Federal government under a compromise agreement with

a taxpayer, but are required to make their own determination. 3. By attempting to collect a State tax on the basis of a compromise agreement made with the Federal government by a taxpayer, they are allowing the Federal government to fix the tax, and this amounts to a delegation of the power to tax vested in the legislature of this State."

The first contention is without merit. The State income taxes for the year 1930 were imposed by the income-tax act of 1929 (Ga. L. 1929, p. 92), and in *State Revenue Commission* v. *Edgar Bros. Co.*, 185 *Ga.* 216 (194 S. E. 505), the court ruled as follows: "The Georgia income-tax act of 1931 (Ga. L. Ex. Sess., 1931, pp. 24, 51) does not place a period of limitation upon the enforcement of an assessment or execution for taxes imposed under the act of 1929 (Ga. L. 1929, p. 92), but places a period of limitation only on the assessment and collection of taxes imposed by the act of 1931." In that case, the court, on p. 219, also held: "The income-tax act of 1929 provided no period of limitation on the assessment or issuance of an execution for taxes imposed by the act."

As to the second contention: section 1 of the income-tax act of 1929, supra, provides, in part: "There shall be levied and collected by the State of Georgia an income tax similar to that of the United States, but at the rate and according to the scale hereinafter set forth. . ." And section 2 of that act, in part, provides: "The net income taxable by the State of Georgia shall be the same as that taxable by the United States, and the tax payable thereon to the State of Georgia shall be one third of that payable to the United States." And in *State Revenue Commission* v. *National Biscuit Co.*, 179 *Ga.* 90, 97 (175 S. E. 368), the court said: "The act, in terms clear and unmistakable, provides as a *basic standard* [italics ours] that 'the net income taxable by the State of Georgia shall be the same as that taxable by the United States, and the tax payable thereon shall be one third of that payable to the United States.'" The contention of the defendant in error, that the sum ($7603.73) which he paid to the United States for additional income taxes for the year 1930 was paid under a compromise settlement, and therefore such payment could not be a basis of taxable income by the State of Georgia, the assessment being based on a contract, is, we think, untenable. It does not appear from the affidavit of illegality or from the evidence that the so-called compromise in this

case was made by the Federal authorities because there was a doubt as to the legality of the claim of the government or the collectibility thereof. On the contrary, it appears from the facts of the case that the only doubt was whether McKenney owed the United States for income taxes $15,000, or $7603.73. This being true, the assessment for such taxes was not based on a contract, and the authorities cited in behalf of the defendant in error on "compromises" are not applicable.

The third contention, that the State Revenue Commission in assessing the tax against the defendant in error was allowing the Federal government to fix the tax, and therefore delegating to it the power to tax which was vested in the legislature of Georgia, is without merit. We have already ruled that the "compromise" made by the Federal government was not a compromise based on any doubt as to the legality of its claim or its collectibility. In *Featherstone* v. *Norman,* 170 *Ga.* 370 (153 S. E. 58, 70 A. L. R. 449), where it was urged that the income-tax act of 1929 violated art. 3, sec. 1, par. 1 of the constitution of Georgia, which provides that "The legislative power of the State shall be vested in the General Assembly," the court, on pp. 393, 394, and 395, said: "The specific ground of this attack is that this act undertakes to vest in Congress, and administrative bureaus and boards of the United States, the power to fix and determine the rates of taxation . . and to promulgate rules and regulations touching features of the administration of this legislation. These objections are without merit. The only color for this contention is that this act provides for the levy and collection of a State income tax similar to that of the United States, adopts certain existing features of the Federal income tax in arriving at the net taxable income of the taxpayer under it, and makes, along with other exemptions of its own, those allowed by the income-tax act of the general government. . . All these things are done by the State itself. The Georgia legislature fixes the rate of tax which a taxpayer shall pay. This is one third of the amount of the tax which he pays . . to the Federal government upon the bases above stated. . . This act merely adopts the Federal method of calculating net income under the Federal statute as the State's method of accomplishing that result. The mere adoption of the method fixed by the Federal law is not vesting in Congress the power to create the State's method.

It adopts existing exemptions and an existing method in determining in part the net taxable income of the taxpayer. . . If the legislature had adopted all the features of the Federal act, this would not be delegating its power to Congress. By the act of 1784, the Georgia legislature adopted the common law of England and such of the statute laws of that country as were usually in force in the province of Georgia on May 14, 1776. This did not in any way delegate to England the legislative power of Georgia."

While the question in that case was whether the act of 1929 delegated the State's power to tax to the Federal government, the decision and the reasoning therein are applicable to, and controlling in, the instant case. The State Revenue Commission, in assessing the tax against McKenney, merely adopted the Federal method of calculating his net income under the Federal statute as the State's method of accomplishing that result, and properly assessed the tax due to the State as one third of the amount which he had paid to the United States. Such adoption was not a delegation to the Federal authorities of the State's power to tax. The fact that the State Revenue Commission, pending the trial of this case, wrote a letter to the defendant in error, saying that "we all agree that the adjudication or agreement by compromise of the amount of tax paid to the Federal government is binding upon us," does not show such a delegation of the State's power to tax. Under the foregoing rulings, the affidavit of illegality failed to set out any cause of illegality, and should have been dismissed on the general demurrer. Furthermore, under the evidence and the law, a verdict for the plaintiff in execution was demanded, and the court erred in directing the verdict in favor of the affidavit of illegality. *Judgment reversed. MacIntyre and Guerry, JJ., concur.*

ON MOTION FOR REHEARING.

PER CURIAM. The so-called compromise in this case was nothing more or less than an adjudication of a fact, to wit, what was the value of the property as of March 1, 1913. The United States Government refused to take the estimated value made by McKenney. McKenney agreed to accept the value found by the government and paid the tax based on this adjudicated value. This was no more a compromise than a verdict of a jury would be a compromise when it was not for the full amount sued for.

*Rehearing denied. Broyles, C. J., Guerry and MacIntyre, JJ., concur.*