70507. BARLAND COMPANY v. BARTOW COUNTY BOARD OF TAX ASSESSORS.
(338 SE2d 16)

BANKE, Chief Judge.

On or about October 1, 1982, the Bartow County Board of Tax Assessors mailed the appellant, Barland Company, a property tax assessment notice with respect to certain property the company owned. This notice specified that the property had been valued at $807,553 for the previous tax year and $101,700 for the current year. In fact, the tax assessors' office had appraised the property at $1,017,000 for the current year, but a zero had been omitted when the figure was transcribed onto the computer worksheet from which the assessment notices and tax bills were prepared. Later in 1982, the appellant received a property tax bill based on the erroneous assessment figure, which it promptly paid in full.

In June of 1983, upon discovery of the clerical error, the board of tax assessors mailed the appellant a "Corrected Assessment Notice to correct clerical error," specifying that the market value of the prop-

erty for the 1982 tax year had actually been appraised at $1,017,000. The appellant filed a timely appeal to the board of equalization from this assessment notice but then appealed directly to the superior court, without obtaining any ruling from the board of equalization, based on a stipulation entered into with the tax assessors that "the board of equalization would adopt the position of the board of tax assessors, and that there is therefore no need to present this appeal to said board of equalization." The superior court accepted jurisdiction of the case and ruled in favor of the board of tax assessors, whereupon the appellant appealed to this court. We reversed, holding that the superior court was not authorized to accept jurisdiction of the appeal until there had been a ruling by the board of equalization. See *Barland Co. v. Bartow County Bd. of Tax Assessors*, 172 Ga. App. 61 (322 SE2d 316) (1984). The case was thereafter remanded to the board of equalization, which ruled in favor of the appellant taxpayer. The tax assessors then appealed to superior court, which reversed the board of equalization, ruling that the tax assessors were entitled to correct the original assessment notice to make it reflect the value at which the property had actually been appraised. In this its second appeal to this court, the appellant does not contest the accuracy of the $1,017,000 appraisal figure but contends that any authority the tax assessors may have had to correct the clerical error in the original notice ended after taxes had been paid in full based on that notice. *Held*:

1. We agree with the trial court that the board was empowered by OCGA § 48-5-299 (a) to issue a new assessment notice to correct the obvious and undisputed clerical error which occurred when the original valuation figure was entered into the computer. That code section provides, in pertinent part, as follows: "The board shall make such investigation as may be necessary to determine the value of any property upon which for any reason all taxes due the state or the county have not been paid in full as required by law. In all cases where the full amount of taxes due the state or county has not been paid, the board shall assess against the owner, if known, and against the property, if the owner is not known, the full amount of taxes which has accrued and which may not have been paid at any time within the statute of limitations."

In so ruling, we are influenced by several considerations. First of all, to allow the appellant to avoid payment of taxes on the assessed value of its property in the present case based solely on a transcription error committed by a clerical employee would result in a gross injustice to the remaining taxpayers of the county. Secondly, we note, as did the trial court, that the great disparity between the appraisal figure originally reported to the taxpayer for 1982 ($101,700) and the figure reported for the prior year ($807,553) should have made it obvi-

ous to the appellant that something was amiss. Finally, we note that, pursuant to OCGA § 48-5-380 (a), taxpayers have a concomitant statutory right to obtain a refund in the event an overpayment of taxes is made on the basis of erroneous assessment.

The appellant's reliance on such cases as *Douglas v. Forrester*, 150 Ga. 57 (2) (102 SE 347) (1919), is misplaced. There, it was held that the county tax receiver was without authority to collect additional taxes on property for prior years in which he had already accepted payment in full based on returns submitted by the taxpayer. The tax assessors in the present case are not, as was the tax receiver in that case, seeking to collect additional taxes on the basis of a totally new appraisal of the value of the property but are seeking instead merely to correct a clerical error which occurred in reporting the original valuation figure to the taxpayer. The appellant's arguments to the contrary notwithstanding, we do not believe such an action can reasonably be considered double taxation. Cf. *Colvard v. Ridley*, 219 Ga. 361, 363 (1) (d) (133 SE2d 364) (1963).

2. It necessarily follows from the foregoing that the trial court did not err in determining that the official records maintained by the tax assessors' office showing the valuation actually placed on the appellant's property for the 1982 tax year were relevant and admissible.

*Judgment affirmed. Deen, P. J., Birdsong, P. J., Carley, Sognier, Pope, Benham, and Beasley, JJ., concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

The authority of the taxing boards to make or correct assessments rests entirely upon the constitution and the statutory taxation scheme. Thus, the acts of the taxing boards must be strictly confined to the powers delineated by the statutes; and acts which exceed the powers specifically set forth in the statutes are void. 84 CJS, Taxation, § 519. See also *Cross v. Miller*, 221 Ga. 579 (146 SE2d 279). As it is said: "Subject to constitutional limitations, it rests entirely with the legislature to bestow as much or as little power as it sees fit on a particular board or officer. Thus, the character of the corrections or changes which the board is authorized to make depends on, and is to be determined by, the provisions of the prevailing statutes." 84 CJS, Taxation, § 519.

This holds true for the correction of clerical or fundamental errors. The taxing board may make corrections of a clerical nature to the extent authorized by statute. 84 CJS, Taxation, § 520; *Burrell v. Lynch*, 85 NYS2d 705 (1949). But in the absence of such a statute, the power to correct clerical defects cannot be conferred by the courts. 84 CJS, Taxation, § 520. See generally *Douglas v. Forrester*, 150 Ga. 57 (2) (102 SE 347).

Does OCGA § 48-5-299 (a) authorize the board of tax assessors to correct clerical defects? In determining whether a function of the taxing board is authorized, statutes are to be construed strictly in the absence of a contrary legislative directive. 84 CJS, Taxation, § 519. Inasmuch as our legislature did not prescribe a liberal interpretation of OCGA § 48-5-299 (a), the statute must be "construed strictly so as to resolve doubt in favor of the taxpayer, and [its] meaning is not to be extended by implication. [Cits.]" *Novak v. Redwine*, 89 Ga. App. 755, 757 (81 SE2d 222). Strictly construing OCGA § 48-5-299 (a) so as to resolve any doubt in favor of Barland, I fail to see how that code section empowers the board of tax assessors to correct clerical defects in the tax assessment notice after the full amount of taxes due have been paid. In my opinion OCGA § 48-5-299 (a) merely requires the board of tax assessors to assess taxable property at a just and fair evaluation. It cannot be interpreted "to mean the Board can act with unlimited discretion, or arbitrarily or for any purpose not specifically set forth in the statute." *Cross v. Miller*, 221 Ga. 579, 581, supra.

My opinion in this regard is buttressed by the fact that OCGA § 48-5-380 specifically enables counties to refund to taxpayers any taxes which were erroneously assessed and collected. If, as the majority holds, OCGA § 48-5-299 (a), authorizes the correction of errors, why then did the legislature deem it necessary to enact OCGA § 48-5-380? I think the answer to this question is obvious.

Not so obvious are the answers to the following questions: Under OCGA § 48-5-299 (a), how long can the taxing board wait before it corrects a previous assessment? One year? Two years? Five years? Does OCGA § 48-5-299 (a) allow the taxing board to correct a previous assessment if the property was sold by the taxpayer? If the property was sold, who is responsible for the payment of additional taxes resulting from the correction, the taxpayer or the purchaser? No answers to these questions can be found in OCGA § 48-5-299 (a). Yet the majority insists that that code section empowers taxing boards to correct previous assessments. Imagine the difficulties which real estate lawyers, title companies, and homeowners will face as a result of this decision.

I would rule, therefore, that taxing boards are not empowered to correct assessment notices as a matter of right. *Of course, this is not to say that a board of tax assessors cannot seek equitable relief from a clerical error.* (An equitable proceeding would be best suited for the resolution of cases of this kind. There the court could weigh the equities and provide answers to questions which are not addressed by OCGA § 48-5-299 (a).) But this case was presented to the superior court by an appeal from the judgment of the board of equalization. Thus, the only question for review is whether the board of tax assessors has the power, as a matter of law, to correct clerical defects. Sim-

ply put, it does not.

DECIDED OCTOBER 23, 1985 —
REHEARING DENIED NOVEMBER 12, 1985 —

*William A. Neel, Jr., J. M. Neel, Jr.*, for appellant.
*G. Carey Nelson III*, for appellee.