A01A0403. COBB COUNTY BOARD OF TAX ASSESSORS
v. MORRISON et al.
(548 SE2d 624)

ELDRIDGE, Judge.

After Robert L. and Shirley P. Morrison made no return of real property for 1995-1998 and had paid the ad valorem taxes based on the transfer tax form on the unimproved lot purchased in 1994, the Cobb County Board of Tax Assessors attempted to reassess the property for improvements made but not returned on the property for 1995-1998. The Superior Court of Cobb County correctly held that, when real property is assessed based on the transfer tax form and the prior tax return of the former owner as unimproved realty and the taxes assessed for such years have been paid based on such transfer tax form, the tax assessors cannot reassess such realty for such prior years to reflect an accurate fair market value for improved realty, even where the property owner failed to return the property as improved.

The parties stipulated the following facts. On November 3, 1994, the Morrisons purchased a vacant lot which had been subdivided from a larger tract. During 1995, they built a house on the lot. These property owners did not return the property in 1995 either as unimproved land and/or improved property. Nor did they return the land as either subdivided or improved with a house in 1996 through 1998;

in fact, the property had been only automatically returned as unimproved land since the former owner last returned it prior to the sale in 1994.

The Cobb County Board of Tax Assessors did not discover that the property was a subdivided lot with a house until 1999. Rather, the Morrisons made no return and paid taxes on the realty based on its unimproved assessed value — $38,890 for 1996; $38,800 for 1997; and $98,560 for 1998 based on the transfer tax form as deemed to have been returned and as thereafter automatically tax returned under OCGA § 48-5-20 (a) (2). The Cobb County Board of Tax Assessors contended that the fair market value of the realty as improved property for assessment was $270,250 in 1996; $270,250 in 1997; and $329,920 in 1998 and that the property had not been returned.

The Cobb County Board of Tax Assessors reassessed the prior years of 1996, 1997, and 1998, treating the undervaluation as a failure to return. The Morrisons appealed to the Board of Equalization, but the Board of Equalization upheld the reassessment. The Morrisons appealed to the Superior Court of Cobb County under OCGA § 48-5-311. On cross-motions for summary judgment, the trial court denied the Board of Tax Assessors' motion and granted the Morrisons' motion.

Under Georgia's ad valorem tax statutes, each property owner has an affirmative duty to return in writing, under oath, the fair market value of the realty including any improvements. OCGA §§ 48-5-6; 48-5-15; 48-5-19 (a); 48-5-20 (a); *CC Office Assoc. v. DeKalb County*, 219 Ga. App. 101 (464 SE2d 243) (1995). Making such return under oath annually is a personal duty of the property owner that cannot otherwise be performed except by an authorized agent who has the authority to bind the property owner to the fair market value, and absent proof of authorization by the property owner to make a binding return, the tax commissioner can reject a return signed by a purported agent. *Southern Tax Consultants v. Scott*, 267 Ga. 347 (478 SE2d 126) (1996). The return requires that any improvements be indicated on the return. OCGA §§ 48-5-15 (a); 48-5-20 (a) (2).

OCGA § 48-5-20 (a) (2) treats the transfer tax form, in the absence of the return of the property after transfer in the preceding year, as returned, and the property "shall be deemed to have [been] returned for taxation the same real property as was acquired by transfer at the same valuation as the real property was finally determined to be subject to taxation in the preceding year." However, the property owner is not relieved from the duty to return the property timely for any improvements. OCGA § 48-5-20 (a) (2).

However, if the property owner fails to file a return subsequent to the year after transfer, then the prior year's paid taxes are auto-

matically deemed as the assessment value and treated as returned. Thereafter, in the following years, if no return was made, the prior year's paid taxes are treated as the assessed value and automatically deemed returned as the prior year's valuation and assessment. OCGA § 48-5-20 (a) (1), (2); *Callaway v. Carswell*, 240 Ga. 579, 580 (242 SE2d 103) (1978); *Security-Morosgo Apts. v. City of Atlanta*, 230 Ga. 117, 118 (196 SE2d 17) (1973). "Nothing in [OCGA § 48-5-20 (a) (2)] shall be construed to relieve the taxpayer of the responsibility to file . . . a timely return where improvements have been made to the real property since it was last returned for taxation." OCGA § 48-5-20 (a) (2). Thus, the automatic refiling of a prior assessment based on taxes paid does not exempt the property owners from the duty to make a return of any improvements or subdivision of the property. OCGA § 48-5-20 (a) (1), (2).

Such provision, OCGA § 48-5-20, does not empower a county board of tax assessors to treat such underreturned fair market value as unreturned, because no statute expressly grants such power and the property owner relied upon the statute for such automatic return. OCGA § 48-5-20. Had the General Assembly intended that the automatic return of unimproved realty be treated as unreturned when there is a failure to make a written return of new improvements or of subdivision of the land, the General Assembly would have expressly stated that the consequences to the property owner who failed to meet his affirmative duty to make the return would be deemed an unreturned property. "Neither the superior court nor this court is authorized to construe a revenue statute so as to confer an authority upon the Board by implication. [Cits.]" *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 726 (1) (368 SE2d 326) (1988).

A construction of a statute by the court shall not render the statutory language meaningless or mere surplusage. *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 (297 SE2d 260) (1982). A plain and unambiguous statute cannot be construed by the courts. *Frazier v. Southern R. Co.*, 200 Ga. 590 (37 SE2d 774) (1946). Thus, the meaning of OCGA § 48-5-20 (a) (2) clearly states that the preexisting statutory duty of the property owner to return property that has been improved or subdivided since the last annual return is not exempted by the automatic return of the property at its prior fair market value. OCGA § 48-5-15. Such plain and unambiguous meaning does not destroy the effect of nonexemption from reporting. *Brown v. State Merit System*, 245 Ga. 239, 242 (1) (264 SE2d 186) (1980). However, this provision cannot be broadened to say more than it does, i.e., to treat such property as unreturned or to empower the county board of tax assessors to reassess property that has been automatically returned and the taxes paid as the equivalent of unreturned property

even though the property owner has violated an affirmative duty to make an actual return. See *Atlanta &c. R. Co. v. Wise*, 190 Ga. 254, 255 (1) (9 SE2d 63) (1940).

"It is well-settled that tax assessors may assess unreturned tangible property for ad valorem tax purposes during the applicable seven-year period of limitation. [Cits.]" *Eckerd Corp. v. Fayette County Bd. of Tax Assessors*, 220 Ga. App. 454 (1) (469 SE2d 285) (1996). Such power applies to unreturned tangible property or underreturned tangible property and not to realty, because real property is already on the county tax digest at an assessed value and by the tax transfer form, but tangible property will not be on the ad valorem tax digest unless returned by the taxpayer. See generally OCGA § 48-5-20. The county board of tax assessors' power to reassess ad valorem taxes differs between realty and personalty, because personalty can totally escape inclusion on the tax digest absent a reliable return of such personalty, while realty cannot escape inclusion and can be directly appraised by the county board of tax assessors. *Eckerd Corp. v. Coweta County Bd. of Tax Assessors*, 228 Ga. App. 94, 95-96 (1) (491 SE2d 173) (1997).

Ga. L. 1992, pp. 1643, 1645, § 2 pertinently provides that "[n]othing in this paragraph shall be construed to relieve the taxpayer of the responsibility to file a . . . timely return where improvements have been made to real property since it was last returned for taxation." OCGA § 48-5-20 (a) (2). However, the descriptive caption of the Act never mentioned such provision among the purposes of the Act, because such provision was merely a recapitulation of the statutory duty to report new improvements, even if there was an automatic return of the prior year's fair market value. The provision merely states that the property owner is not relieved of the duty to report new subdivision or new improvements by automatic annual return reporting. There is no sanction imposed for failure to return new improvements and for allowing an inaccurate fair market value to automatically be returned instead. The underreturn of realty does not make it unreturned property within the strict construction of the tax law. OCGA §§ 48-5-27; 48-5-299 (a), (b); 48-5-305 (b).

"Revenue statutes are to be construed strictly so as to resolve doubt in favor of the taxpayer, and their meaning is not to be extended by implication." (Citations and punctuation omitted.) *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, supra at 724. Tax laws must be strictly construed; absent the specific grant to the county board of tax assessors of the power to reassess realty returned at an incorrect fair market value, it lacks such power or authority and acts ultra vires in seeking to do so. Id. It is beyond argument that the property owner can abuse the tax law by subdividing or by improving realty, making no return, and allowing an automatic

return at a prior year's fair market value and avoid the fair share of ad valorem taxes due. However, the county board of tax assessors has available to it the county- or municipality-issued building permits, certificates of occupancy, transfer tax forms, or rezoning ordinances that grant subdivision of the land, which should trigger visual inspection of the property for tax assessment purposes long before the property has to be returned in a tax year. See *Eckerd Corp. v. Coweta County Bd. of Tax Assessors*, supra at 95.

"[A] county board of tax assessors has no authority to undertake a reappraisal of realty once an assessment has been issued and taxes on the property have been paid for a given tax year." *Fulton County Bd. of Tax Assessors v. Dean*, 219 Ga. App. 137, 138 (464 SE2d 257) (1995). In this case, the county board of tax assessors seeks to collect additional taxes resulting from a totally new appraisal of the realty as improved property, which is prohibited under these facts and circumstances. See *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, supra at 725. The board of tax assessors cannot treat property that is merely underreturned in fair market value as unreturned property. Id. at 724.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 27, 2001 —
RECONSIDERATION DENIED MAY 24, 2001.

*Haynie, Litchfield & Crane, Douglas R. Haynie, Harbert S. Gregory, Jr.*, for appellant.
*Charles A. Evans*, for appellees.

