A02A0060. WILLIAM L. BONNELL COMPANY, INC. v. COWETA COUNTY BOARD OF TAX ASSESSORS.
(556 SE2d 159)

ELDRIDGE, Judge.

The Coweta County Board of Tax Assessors granted freeport ad valorem tax exemption for 1993, 1994, and 1995 to the William L. Bonnell Company, Inc., a manufacturer of aluminum extrusion. The Board subsequently reassessed the value of inventory and finished products held for sale returned in the Application for Inventory/Freeport Exemption of Bonnell by changing the method of accounting for inventory valuation from "last-in, first-out" (LIFO) used by Bonnell to "first-in, first-out" (FIFO) when the application failed to disclose the accounting method used. The use of such latter assumption forced up artificially the value of the raw materials, inventory, and partially finished goods above the freeport application. The Board refused to allow Bonnell to amend the freeport application in proportion to the resulting increase in value of the inventory. Bonnell appealed the reassessment to the Superior Court of Coweta County. On cross-motions for summary judgment based upon a joint stipulation of facts, the issues were submitted to the trial court, which denied Bonnell's motion and granted the Board's. We reverse, because the freeport exemption requires no particular accounting method to be utilized as to partially finished goods, finished goods, and raw material, but does mandate that manufactured finished goods stored in Georgia for shipment outside the state by someone other than a Georgia manufacturer use FIFO. See OCGA § 48-5-48.2 (b) (3).

1. (a) A freeport exemption for raw materials, partially finished goods, and inventory of finished goods held by the original manufacturer or producer does not mandate any particular accounting method to be used for valuation. OCGA § 48-5-48.2 (b) (1), (2). So long as the method employed by the taxpayer is consistent with its other accounting method and fairly and accurately reflects values, the taxpayer is free to select either the LIFO or FIFO assumption or any other method of inventory evaluation. However, as to finished goods stored in Georgia for shipment out of state to someone other than the Georgia manufacturer, the Act mandates that the exemption "shall

be determined based on application of a first-in, first-out method of accounting for the inventory." OCGA § 48-5-48.2 (b) (3).

The statute is plain and unambiguous that inventories of raw materials, finished goods, and partially finished goods require no particular method of inventory accounting. OCGA § 48-5-48.2 (b) (1), (2). Words used in a statute should be given their ordinary and common meaning where the statutory language is plain and unambiguous, as here. *Ray M. Wright, Inc. v. Jones*, 239 Ga. App. 521, 523 (521 SE2d 456) (1999). All words of a statute should be given effect, and a statute should not be construed so as to render any language meaningless or mere surplusage. *Cobb County Bd. of Tax Assessors v. Morrison*, 249 Ga. App. 691, 693 (548 SE2d 624) (2001); *Whirl v. Safeco Ins. Co.*, 241 Ga. App. 654, 655 (527 SE2d 262) (1999). Where in one part of the statute no accounting method is specified, but in a subsequent section an accounting method is specified, this indicates the intent of the General Assembly to allow the taxpayer to choose any generally accepted accounting method where not specified, because the General Assembly could have mandated that FIFO was to be used with all types of inventory as indicated by the specification in the later section. See generally *Ray M. Wright, Inc. v. Jones*, supra at 522-523. Flexibility in the taxpayer's accounting methods, except as to finished goods held for shipment outside the state, was the intent of the General Assembly as to the accounting method for inventory evaluation. "Revenue statutes are to be construed strictly so as to resolve doubt in favor of the taxpayer, and their meaning is not to be extended by implication." (Citations and punctuation omitted.) *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 724 (1) (368 SE2d 326) (1988). Accord *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 694. "Neither the superior court nor this court is authorized to construe a revenue statute so as to confer an authority upon the Board by implication." *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, supra at 726 (1). Accord *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 693. Thus, the Board lacked the authority to require that a particular accounting method for inventory evaluation be used by the taxpayer on the personal property return or the application for freeport exemption through office procedure. Office procedure for the county board of tax assessors, where there exists underlying statutory authority to act, can define the statutory meaning of terms like "filed" when such term is contained in the statute without definition, because the Board is granted the general authority to implement the Act within certain statutory parameters. *DeKalb County Bd. of Tax Assessors v. Lanier Worldwide*, 208 Ga. App. 435, 436-437 (1) (430 SE2d 595) (1993). However, when the statute contains no provision for waiver of freeport exemptions to applications filed beyond a certain date, the

Board lacked statutory authority to create a waiver through office procedure. See *TEC America v. DeKalb County Bd. of Tax Assessors*, 170 Ga. App. 533, 536-538 (2) (317 SE2d 637) (1984). Thus, the Board through its office procedure lacked statutory authority to mandate that FIFO be utilized in an application for freeport exemption which would cause a waiver of a timely filed application for freeport exemption with a schedule of all inventory. Id. at 536-538 (2).

Fair market value of inventory is a question of fact and not a mere accounting assumption made by the assessors in lieu of actually making a factual determination of the value of each item of inventory; cost of the inventory based upon a FIFO assumption may be a short way to determine value but may not accurately reflect value, because of inflation, deflation, damage, deterioration, style change, or obsolescence. See generally *J. C. Penney Co. v. Richmond County Bd. of Tax Assessors*, 233 Ga. App. 399 (504 SE2d 201) (1998).

> While we agree that property must be assessed at fair market value, OCGA § 48-5-6, "cost" is not a concept foreign to such valuation. What the taxpayer was willing to pay for the personalty, its cost to him, is one of the factors from which fair market value may be determined, if not the primary factor, because such figure is fixed, while other factors may deviate upward or downward from such figure based upon the fair market. . . . For ad valorem tax purposes, fair market value is not the retail value to the taxpayer, but the current wholesale value adjusted for the fair market; thus, the taxpayer's cost may be adjusted upward, downward, or remain the same to reflect the "wholesale market" as it determines the fair market value of the tangible personalty in the taxpayer's possession at that economic moment in time.

*Eckerd Corp. v. Coweta County Bd. of Tax Assessors*, 228 Ga. App. 94, 103-104 (3) (491 SE2d 173) (1997). See also *J. C. Penney Co. v. Richmond County Bd. of Tax Assessors*, supra at 401.

(b) LIFO makes an accounting assumption for income purposes where it is applied to items of inventory that, as an item is sold from inventory, the purchaser buys the newest item, i.e., the last-in item of inventory; thus, the sale becomes the first-out. Where prices increase through inflation or for other reasons, the newest and most expensive items with the higher cost basis move into and out of inventory first.

> Under any method of inventory, "costing" the closing inventory is a necessary step in the calculation of taxable income.

FIFO and LIFO are alternative accounting methods for arriving at this cost. LIFO assumes that the last articles purchased during the year were the first ones sold, so that articles left in the inventory at the end of the year were the first ones purchased. FIFO (first-in, first-out) assumes the converse, that the earliest article purchased was the first one sold, so that articles left in the inventory at the end of the year were the last ones purchased. Obviously *neither FIFO nor LIFO corresponds with actual fact*, although the FIFO assumption seems more logical in the normal course of business operations. In a period of stable prices the application of either theory renders the same result. But during an inflationary period, LIFO is distinctly advantageous to the taxpayer, for, in effect, he is not required to include as profit increases in value of inventory. This illustrates the *real purpose of the methods — to reflect accurately what normally is considered as profit during inflationary and deflationary periods in the economy. . . .* The argument is based on the fact that FIFO and LIFO deal in terms of specific articles of merchandise and thus appear to be inapposite to the retail method of inventory valuation, which deals in terms of dollar values. But this seeming inappropriateness is superficial when one considers the purpose of the theories — accurate reflection of profit.

(Emphasis supplied.) *R. H. Macy & Co. v. United States*, 255 F2d 884, 885-886 (2nd Cir. 1958). We have been in an inflationary economy, although inflation is now relatively small, for many years. *"Neither FIFO nor LIFO corresponds with actual physical inventory."* (Emphasis supplied.) *Commr. of Internal Revenue v. Joseph E. Seagram & Sons, Inc.*, 394 F2d 738, 741 (2nd Cir. 1968). Thus, inflation, though small, distorts inventory value under FIFO; therefore, taxpayers use LIFO for income accounting to avoid phantom income in sale of goods.

The inventory method of accounting, including the use of LIFO inventories, is subject to conditions prescribed by statute and the Treasury Regulations. According to Section 471, the basic requirements for taking inventories are that they must conform to the best accounting practice and must clearly reflect the taxpayer's income. [Cit.] The Regulations provide that to clearly reflect income, the taxpayer's inventory practice must be consistent from year to year and that consistency is given a greater right than any particular

method or basis for inventory valuation (Treas. Reg. § 1.471-2 (b)).

Id. at 741. Thus, LIFO and FIFO are accounting methods to accurately determine income for tax purposes and not methods to accurately determine the inventory value at any moment in time, because even with slight inflation, FIFO will distort the value of existing inventory. Therefore, the older inventory with the lower cost basis remains in inventory and has an overall lower cost basis or value. When FIFO is used as an accounting assumption, it is assumed that the first item in inventory, the oldest item, is sold first, i.e., first-in and first-out, so that the existing inventory remaining will always be the most recently purchased replacement item, which will generally be more expensive than the item that it replaced. The net effect of using the FIFO assumption for ad valorem tax purposes is that existing inventory will have a higher value. To switch from LIFO to FIFO creates an artificial increase in the valuation, because it goes from the lowest cost basis for the inventory to the highest cost basis, assuming that the costlier inventory remains unsold. Likewise, to switch from FIFO to LIFO creates a decrease in value of inventory.

The Georgia income tax statute "adopts the Federal method of calculating net income under the Federal statute as the State's method of accomplishing" the determination of taxable income for State taxation purposes; thus, Georgia income tax laws piggyback onto the federal income tax laws. *Head v. McKenney*, 61 Ga. App. 552, 555 (6 SE2d 405) (1939); see also OCGA § 48-7-27 (a). Thus, Georgia is guided by federal cases which deal with income determination. When income or profits are calculated based upon one of these inventory valuation methods, to shift from one to the other can create either an accounting profit or loss on paper. For this reason, the Internal Revenue Service and the Georgia Department of Revenue require a sound business reason for any change from one method to the other. See OCGA § 48-7-27 (a); 26 USCS §§ 471; 472.

The purpose for the IRS allowing taxpayers like Bonnell to use LIFO was to afford relief against inventory profits generated in a rising market where cheaper inventory must be replaced with more expensive inventory, but the inflationary increase is not consumed by income taxes on the artificial profit. *Mohawk Liqueur Corp. v. United States*, 324 F2d 241 (6th Cir. 1963). Thus, Georgia's income tax laws follow the federal revenue laws, regulations, and procedures so that consistency of a taxpayer's inventory valuation is mandated by Georgia law as well. A local tax assessor acts arbitrarily and capriciously to impose a different accounting method on the taxpayer for ad valorem tax purposes, causing inconsistency in the taxpayer's method of accounting, which is inconsistent with Georgia income tax laws.

If LIFO is an inappropriate method of inventory evaluation for purposes of freeport exemption, because it tends to undervalue the inventory in an inflationary economy, then it is for the General Assembly and not the Board to prohibit such use.

2. In fairness and justice, if a county tax assessor requires a change in valuation of inventory by use of a different accounting method, then the application of the freeport exemption must be allowed to be amended in proportion to the increase in value of the eligible inventory. See OCGA § 48-5-48.1 (c) (2) (B). The General Assembly intended for the freeport exemption to provide certainty, predictability, and exemption in order to encourage manufacturing and trade in the State by exemption from ad valorem tax on certain inventory. To refuse to allow retroactive amendment to a timely filed and valid freeport exemption constitutes the type of arbitrary and capricious conduct of local tax assessors from which the General Assembly intended to protect the qualified applicants. See OCGA § 48-5-48.1 (c) (2) (B).

In *Georgian Art Lighting Design v. Gwinnett County Bd. of Tax Assessors*, 211 Ga. App. 510 (439 SE2d 687) (1993), we held that, where the taxpayer is qualified and timely files a freeport exemption application and where the value of its inventory was understated, the taxpayer should be granted a proportional freeport exemption on the increased inventory, because the law does not favor either forfeitures or penalties such as waiver of the exemption although a statutory penalty for failure to report the full value was upheld. In this case, there was no failure to report by Bonnell; thus, Bonnell should receive a proportional freeport exemption.

Under Ga. L. 1997, p. 963, § 3 (OCGA § 48-5-48.1 (c)), it treats the "difference between fair market value of the inventory as reported and the fair market value finally determined to be applicable to the inventory for which the exemption is sought" as waived. However, such waiver applies to the "failure to file properly the application and schedule." The plain and unambiguous language states: "failure to report . . . inventory for which such exemption is sought in the schedule provided . . . in the application." In OCGA § 48-5-48.1 (c) (2) (B), the Act makes clear that an amended freeport application can be filed: "The failure to file timely such application and schedule shall constitute a waiver of the exemption until the first day of the month following the month such application and schedule are filed properly with the county tax assessor." This subsection of the statute dealing with waiver applies to unreported inventory and not to undervalued inventory. See generally *Georgian Art Lighting Design v. Gwinnett Bd. of Tax Assessors*, supra at 511. However, in this case, Bonnell did not fail to report inventory but in fact reported all inventory in the schedule. The tax assessors took

issue with the accounting method used to value inventory returned in the application but found no underreporting of inventory, only undervaluing of inventory. Therefore, such provisions of the Act must be strictly construed against a forfeiture or penalty where the inventory was fully reported, although a LIFO method of inventory evaluation was used instead of FIFO and produced a lower value. Id.; *TEC America v. DeKalb County Bd. of Tax Assessors*, supra at 536 (1). Thus, the waiver provision does not apply to Bonnell under the stipulated facts of this case.

*Judgment reversed. Smith, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 24, 2001.

*Alston & Bird, Timothy J. Peaden, Mary T. Benton*, for appellant. *Glover & Davis, Jerry A. Conner, Asa M. Powell, Jr.*, for appellee.