A04A1218. PINE POINTE HOUSING, L.P. v. BOARD OF TAX ASSESSORS OF LOWNDES COUNTY et al.
(605 SE2d 443)

RUFFIN, Presiding Judge.

The Lowndes County Board of Tax Assessors and Tax Commissioner Mary Nell Robertson (collectively "the tax assessors") filed a declaratory judgment action against Pine Pointe Housing, L.P. ("Pine Pointe") to determine Pine Pointe's liability for 1998 and 1999 ad valorem taxes. The tax assessors moved for summary judgment, arguing that Pine Pointe had underpaid its taxes for those years and, as a result, owed additional sums. The trial court agreed, granting final judgment for the tax assessors. Pine Pointe appeals, and for reasons that follow, we affirm.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a

matter of law."[1] We review a trial court's grant of summary judgment de novo, construing the record and all reasonable inferences in favor of the nonmoving party.[2]

So viewed, the record shows that, in 1997, the tax assessors appraised real property owned by Pine Pointe for ad valorem tax purposes. Dissatisfied with the appraisal, Pine Pointe appealed its 1997 tax assessment to the Lowndes County Board of Equalization, which reduced the assessment in September 1997. The tax assessors appealed that decision to the superior court.

Following a bench trial in November 2000, the superior court issued an order establishing the 1997 fair market value of Pine Pointe's property as $4,709,000, an amount greater than the value set by the board of equalization. We affirmed the trial court's decision in *Pine Pointe Housing v. Lowndes County Bd. of Tax Assessors*,[3] and the Supreme Court denied certiorari.[4]

Pine Pointe paid taxes in 1997, 1998, and 1999 based on the board of equalization's 1997 valuation. Citing the higher valuation subsequently affirmed by this Court, the tax assessors sought additional payment of taxes and interest from Pine Pointe for the 1997, 1998, and 1999 tax years. Pine Pointe paid the additional amounts due for 1997. It refused, however, to pay the requested amounts for 1998 and 1999, asserting, among other things, that it had already paid its taxes for those years and that neither party had appealed the amounts paid.

Seeking a resolution of Pine Pointe's 1998 and 1999 tax liability, the tax assessors filed this declaratory judgment action and moved for summary judgment. The assessors claimed that Pine Pointe was liable in tax years 1998 and 1999 for taxes based on the 1997 value affirmed by this Court, rather than the lower value set by the board of equalization. Thus, they argued, Pine Pointe had underpaid its taxes for 1998 and 1999, requiring additional payment. The trial court agreed. We find no error.

1. In Georgia, "[a]ll improved and unimproved real property . . . which is subject to taxation shall be returned in person or by mail by the person owning the real property or by his agent or attorney to the tax receiver or tax commissioner of the county where the real property is located."[5] A taxpayer making such return must verify under oath that the value he or she placed on the property represents its

---

[1] *Trans Link Motor Express v. Dougherty County*, 265 Ga. App. 10, 11 (592 SE2d 859) (2003).

[2] See id.

[3] 254 Ga. App. 197 (561 SE2d 860) (2002).

[4] *Pine Pointe Housing v. Lowndes County Bd. of Tax Assessors*, Case No. S02C1045 (decided June 21, 2002).

[5] OCGA § 48-5-15 (a).

true market value.[6] Under certain circumstances, however, taxable property not formally returned by the taxpayer is deemed automatically returned. Pursuant to OCGA § 48-5-20 (a) (1):

> Any taxpayer of any county who returned or paid taxes in the county for the preceding tax year and who fails to return his property for taxation for the current tax year . . . shall be deemed to have returned for taxation the same property as was returned or deemed to have been returned in the preceding tax year at the same valuation as the property was finally determined to be subject to taxation in the preceding year.

Pine Pointe did not formally return its real property in 1998 and 1999. Relying on its payment of taxes in 1997 and 1998, it instead invoked the automatic return provision in OCGA § 48-5-20 (a) (1). Thus, its 1998 and 1999 returns were based on the payment of taxes in the preceding year.

The automatic return provision, however, deems the property returned at the value the property was "finally determined to be subject to taxation in the preceding year."[7] In this case, the 1997 value of Pine Pointe's property has been finally determined to be $4,709,000. Pine Pointe, therefore, automatically returned the property in 1998 at a value of $4,709,000. That same "finally determined" value extended to the 1999 automatic return.[8]

As noted above, Pine Pointe paid its 1998 and 1999 taxes — and in fact received tax bills from the tax assessors — based on the 1997 value set by the board of equalization. But that value is not the valuation "finally determined to be subject to taxation."[9] Accordingly, it is not the value at which Pine Pointe automatically returned its property in 1998 and 1999. Pine Pointe admittedly underpaid its taxes in 1997 and remitted, without objection, the additional amounts

---

[6] OCGA § 48-5-19 (a).

[7] OCGA § 48-5-20 (a) (1).

[8] See id.

[9] Id. Although the 1997 valuation did not become final for several years, nothing in OCGA § 48-5-20 (a) (1) prevents the final determination from relating back to the appropriate tax year or years. We recognize that, under the statute, the automatic return is "at the same valuation as the property was finally determined to be subject to taxation *in the preceding year.*" (Emphasis supplied.) OCGA § 48-5-20 (a) (1). But this language does not require that the final determination actually be made in "the preceding year," a questionable proposition given the various levels of appeal. Instead, the phrase "in the preceding year" logically refers to the year in which the property was subject to taxation. See *Trent Tube v. Hurston*, 261 Ga. App. 525, 527 (1) (583 SE2d 198) (2003) ("Absent clear evidence of a contrary intent, a statute's 'words should be assigned their ordinary, logical, and common meaning,' [cit.], and courts must avoid constructions that render part of a statute mere surplusage.").

due for that year pursuant to the property's finally determined fair market value. Given the automatic return, a similar underpayment resulted in 1998 and 1999.

On appeal, Pine Pointe argues that, because it has already paid its taxes for 1998 and 1999, the tax assessors cannot seek additional payment for those years. The dissent agrees. The cases on which Pine Pointe and the dissent rely, however, prohibit *reassessments* or *revaluations* of real property for tax years in which taxes have already been paid.[10]

This case does not involve a reassessment or revaluation of under-returned property. The tax assessors have not reappraised Pine Pointe's real estate.[11] Instead, they seek to collect taxes due, but not paid, on the property based on the $4,709,000 value actually returned by Pine Pointe in 1998 and 1999.[12] Neither Pine Pointe nor the dissent cites any authority prohibiting collection of such unpaid taxes, and we agree with the trial court that Pine Pointe is liable as a matter of law for the deficiency.

2. Despite Pine Pointe's claims to the contrary, OCGA § 48-5-299 (c) does not require reversal of the trial court's decision. Under that Code section,

> [r]eal property, the value of which was established by an appeal in any year, that has not been returned by the taxpayer at a different value during the next two successive years, may not be changed by the board of tax assessors during such two years for the sole purpose of changing the valuation established or decision rendered in an appeal to the board of equalization or superior court.[13]

According to Pine Pointe, because OCGA § 48-5-299 (c) prohibits a change in real property valuation for two years after an appeal establishes the value, the tax assessors could not "reassess[ ] Pine Pointe's properties during the calendar years 1998 and 1999." In Pine

---

[10] See, e.g., *Cobb County Bd. of Tax Assessors v. Morrison*, 249 Ga. App. 691, 694-695 (548 SE2d 624) (2001); *Eckerd Corp. v. Coweta County Bd. of Tax Assessors*, 228 Ga. App. 94, 95-96 (1) (491 SE2d 173) (1997); *Fulton County Bd. of Tax Assessors v. Dean*, 219 Ga. App. 137, 138-139 (464 SE2d 257) (1995).

[11] Compare id.

[12] See OCGA §§ 48-5-27 ("Tax commissioners, tax receivers, and tax collectors shall receive returns and collect taxes due on returns for former years for which any person is in default."); 48-5-299 (a) ("In all cases where the full amount of taxes due the state or county has not been paid, the [county board of tax assessors] shall assess against the owner . . . the full amount of taxes which has accrued and which may not have been paid at any time within the statute of limitations.").

[13] OCGA § 48-5-299 (c).

Pointe's view, therefore, the trial court erred in awarding summary judgment to the tax assessors. This argument lacks merit.

OCGA § 48-5-299 (c) limits the circumstances under which county tax assessors may reassess property, and we have found that the General Assembly particularly intended to address upward reassessments.[14] This case, however, does not involve a reassessment or a change in valuation. The tax assessors merely seek to apply the 1997 fair market land value, as determined through the appeals process and automatically returned by Pine Pointe, in the two succeeding tax years, a request that falls squarely within OCGA § 48-5-299 (c).

Citing the legislature's reference to "real property, the value of which was established *by an appeal in any year*, that has not been returned . . . at a different value during the next two successive years,"[15] Pine Pointe contends that we can only consider a 1997 property valuation actually established on appeal during 1997. It thus suggests that, for purposes of subsection (c), the applicable 1997 valuation is the value set by the board of equalization, the only part of the appeals process completed in 1997.[16] We cannot agree with this tortured reading of the statute. In our opinion, the phrase "in any year" relates to the year *for which* valuation is sought, not the year *during which* the appeals process concludes or establishes a value.

Furthermore, Pine Pointe's reliance on OCGA § 48-5-299 (c) fails even if that subsection requires us to look to the board of equalization's 1997 value. As noted above, Pine Pointe automatically returned the property in 1998 and 1999 at $4,709,000, a value greater than that set by the board of equalization.[17] Under its clear terms, OCGA § 48-5-299 (c) only applies when the property "has not been returned by the taxpayer at a different value during the next two successive years." Given the higher value of the 1998 and 1999 returns, therefore, the two-year moratorium in subsection (c) has no application if, as Pine Pointe suggests, we must start the statutory analysis with the board of equalization's 1997 value.

---

[14] See *Cullum v. Chatham County Bd. of Tax Assessors,* 243 Ga. App. 865, 866 (534 SE2d 535) (2000).

[15] (Emphasis supplied.) OCGA § 48-5-299 (c).

[16] The superior court did not issue its decision until 2000, approximately three years later. The dissent appears to blame the tax assessors for this delay, asserting that they allowed the appeal to "languish." An appeal from the board of equalization to the superior court "must be heard 'at the first term following the filing of the appeal unless continued by the court upon a showing of good cause.' " *Pine Pointe,* supra, 254 Ga. App. at 203 (3). Although the appealing party bears the burden of having the action tried at the first term, "a failure to do so is not fatal if a reasonable excuse or reasonable delay is shown." Id. During the initial tax appeal, the trial court found a reasonable excuse for why a hearing was not held in the first term, and we affirmed that ruling. See id. Thus, we cannot agree that the tax assessors allowed the initial tax appeal to "languish."

[17] See OCGA § 48-5-20 (a) (1).

3. Finally, Pine Pointe argues that the tax assessors failed to comply with the statutory notice requirements in OCGA § 48-5-306. Again, we disagree. That provision relates to notice that must be given if the tax assessors correct or change a taxpayer's return.[18] In this case, the assessors did not correct Pine Pointe's 1998 or 1999 returns, change those returns, or reassess the property. Rather, Pine Pointe elected to *automatically return* its property in 1998 and 1999 at the $4,709,000 value. Accordingly, the statutory notice requirements of OCGA § 48-5-306 do not preclude summary judgment.

*Judgment affirmed. Andrews, P. J., Johnson, P. J., Miller, Ellington and Adams, JJ., concur. Eldridge, J., dissents.*

ELDRIDGE, Judge, dissenting.

During 1997, the Lowndes County Board of Tax Assessors reappraised Pine Pointe Housing; on July 28, 1997, Pine Pointe appealed this reassessment to the Lowndes County Board of Equalization. On September 23, 1997, the Lowndes County Board of Equalization adjusted and changed the reassessment downward, and on October 17, 1997, the Lowndes County Board of Tax Assessors appealed the decision to the superior court. On November 30, 2000, after three years delay and after a jury trial, judgment was entered setting the fair market value of the property at $4,709,000, which reassessment was higher than found by the board of equalization and the original reassessment. The judgment was timely appealed, and on March 12, 2002, this Court affirmed. *Pine Pointe Housing v. Lowndes County Bd. of Tax Assessors*, 254 Ga. App. 197 (561 SE2d 860) (2002).

In 1998 and 1999, the 1997 adjusted reassessment by the board of equalization was used by the tax commissioner for the next two years to bill those years' taxes without an appeal to the board of equalization by the tax assessors, and the property assessments for 1998 and 1999 were not appealed by either party. Pine Pointe did not file a tax return for 1998 and 1999 and relied upon OCGA § 48-5-20 (a) (1) for the automatic tax return based upon the prior year's reassessment as found by the board of equalization. On October 23, 1998, the 1998 tax bill, based upon the adjusted reassessment, was paid in full without objection by Pine Pointe. On February 18, 2000, after the tax bill for 1999 was corrected, the 1999 taxes, based upon the adjusted reassessment, were paid in full by Pine Pointe.

On February 18, 2003, the appellees demanded that additional taxes and interest be paid for the tax years 1998 and 1999 based on the affirmance of its appeal of the original 1997 tax reassessment made by the board of tax assessors, without giving any new notice of

---

[18] See OCGA § 48-5-306 (a).

reassessment. The tax commissioner relied upon OCGA § 48-5-20 (a) (1), which provides for automatic tax returns for the taxpayer as "returned in the preceding tax year at the same valuation as the property was finally determined to be subject to taxation in the preceding year." The 1997 reassessment under OCGA §§ 48-5-20 (a) (1) and 48-5-299 (c) required that the assessment in 1998 and 1999 be the same as 1997. Pine Pointe received no reassessment, change, or correction of its 1998 and 1999 property tax assessments prior to such demand letter. There has never been a written notice in compliance with OCGA § 48-5-306 (b) for 1998 and 1999. Nor has Pine Pointe been afforded an opportunity to appeal such reasserted reassessment sent in 2003 for 1998 and 1999.

On June 27, 2003, the Lowndes County Board of Tax Assessors and Mary Nell Robertson, Lowndes County Tax Commissioner, brought this declaratory judgment action against Pine Pointe, seeking a determination that it owed additional taxes and interest for 1998 and 1999.

1. The county board of tax assessors has the continuing duty to investigate all real estate and personal property located in the county subject to taxation and to require its proper return. The board of tax assessors has the duty to assess taxes against the owner. OCGA § 48-5-299 (a). Once an assessment has been made and the taxes paid in full, there can be no reassessment for such tax year on real estate, even if real property was under-returned. *Cobb County Bd. of Tax Assessors v. Morrison*, 249 Ga. App. 691, 695 (548 SE2d 624) (2001); *Fulton County Bd. of Tax Assessors v. Dean*, 219 Ga. App. 137, 138 (464 SE2d 257) (1995); *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 724-725 (1) (368 SE2d 326) (1988). The board of tax assessors may correct a true clerical error in a new assessment, but cannot create a second reassessment after the real property has been assessed and the taxes paid. *Barland Co. v. Bartow County Bd. of Tax Assessors*, 176 Ga. App. 798, 799-800 (1) (338 SE2d 16) (1985).

> Real estate taxation deals with land and the improvements thereon which are considered "one" and cannot be separated so as to have value apart from each other. *Fayette County Board of Tax Assessors v. Ga. Utilities Co.*, supra [at 725]; *Fulton County Bd. of Tax Assessors v. Dean*, [supra]. Realty and the improvements thereto are out in the open and may be compared with other properties, the value of which are matters of public record. The tax assessor may use independent information available to actually assess the realty. Due diligence in the inspection of realty reveals any improvements or changes in the fair market value in the real estate

market. Accordingly, real property is capable of a fair market valuation by the tax assessor, separate and apart from the any tax return. For this reason, realty is yearly appraised and valued first by the tax assessor, and a tax bill issues thereon from the tax collector to the taxpayer, who eagerly awaits his yearly assessment. Rules & Regulations of the State of Georgia, Chapter 560-11-3-.17. No return by the taxpayer is necessary, and the payment of the subsequent tax bill is the payment of the tax assessor's determination of the realty's fair market value. See OCGA §§ 48-5-18; 48-5-20. Thereafter, any attempt to tax a previously unreturned or undiscovered improvement to the realty for years past would be a "revaluation" by the tax assessor of the same property after the taxes, as previously assessed and valued by the tax assessor, had been paid in full to the tax collector. *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, supra at 725. Clearly, the equities of this scenario demonstrate that issues of double taxation may arise, since the tax assessor had already passed upon the fair market value of the land. Consequently, this Court has, where land is concerned, precluded a second reassessment when the tax collector's tax bill has been paid in full.

*Eckerd Corp. v. Coweta County Bd. of Tax Assessors*, 228 Ga. App. 94, 95-96 (1) (491 SE2d 173) (1997).

The appellees cannot do by indirection through a declaratory judgment action what they are prohibited from doing directly through the assessment and the appeal process of OCGA § 48-5-311. See *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 695; *Fulton County Bd. of Tax Assessors v. Dean*, supra at 138. The taxes for 1998 and 1999 as billed by the tax commissioner having been paid in full, the tax commissioner cannot later collect a higher amount under OCGA §§ 48-5-20 (a) (1) and 48-5-299 (c), because the taxes have been paid in full under the earlier assessment made in 1998 and 1999 prior to the final determination for 1997.

2. The purpose of OCGA § 48-5-299 (c) was to give the property owner two consecutive years free from further reassessments, after a tax appeal which established the assessed value of the property, whether the reassessment was affirmed, reversed, or compromised by the board of equalization, arbitration, or the superior court, unless there was some change made in the fair market value of the property in such subsequent two years. See *Moreton Rolleston, Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 405, 409-410 (523 SE2d 600) (1999). Thus, OCGA § 48-5-299 (c) shall "cut both ways" to provide two consecutive years free of additional reassessments after

the reassessment has been affirmed, reversed, or changed for either party by the board of equalization, arbitration, or the superior court. After appeal as used in OCGA § 48-5-299 (c) must be construed in conjunction with OCGA § 48-5-20 (a) (1) to mean "finally determined to be subject to taxation in the preceding year."

On appeal in 1997, the Lowndes County Board of Equalization reduced the reassessment, which satisfied Pine Pointe but which the board of tax assessors appealed to the superior court. Although under the appeal process, such appeal is to be heard de novo at the first term of the superior court following the appeal "unless continued by the court upon a showing of good cause," this appeal was allowed to languish for three years by the board of tax assessors, which created the uncertainty as to what should be the assessments for 1998 and 1999. See OCGA §§ 48-5-299 (c); 48-5-311 (g) (4) (A); see generally *McCauley v. Bd. of Tax Assessors*, 243 Ga. 844, 845-846 (257 SE2d 266) (1979); *Pine Pointe Housing v. Lowndes County Bd. of Tax Assessors*, supra; *DeKalb County Bd. of Tax Assessors v. Stone Mountain Indus. Park*, 147 Ga. App. 503 (249 SE2d 318) (1978). Finally, on November 20, 2000, such board of equalization reduced reassessment was reversed by the superior court, which judgment went up on appeal and was affirmed. *Pine Pointe Housing v. Lowndes County Bd. of Tax Assessors*, supra at 197. But the tax commissioner in 1998 and 1999 used the 1997 adjusted reassessment as found on appeal by the board of equalization, now reversed, to set the taxes in those years.

Acting under OCGA § 48-5-299 (c), the board of tax assessors left the assessments for 1998 and 1999 as found by the board of equalization on appeal, even though it had appealed such finding to the superior court, seeking to reverse such appeal. Therefore, the board of tax assessors did nothing in 1998 and 1999, allowing the board of equalization's adjusted reassessment to be used by the tax commissioner to issue and to collect taxes based on such assessments in 1998 and 1999. These 1998 and 1999 taxes were assessed and fully paid before the appeal became final, and even though the final appeal required the tax assessors to use the final 1997 reassessment for 1998 and 1999. See generally *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 695.

Relying on the favorable adjusted reassessment for 1997 as found by the board of equalization, Pine Pointe did not return the property in 1998 and 1999 and allowed the automatic return at the adjusted reassessment to occur for such years. OCGA §§ 48-5-15 (a); 48-5-20 (a) (1); *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 692-695. Also, the board of tax assessors allowed the tax commissioner to use the 1997 adjusted reassessment to send out the 1998 and

1999 tax bills and collect the taxes based upon such adjusted reassessment. Id. at 695. The board of tax assessors and the tax commissioner lost any opportunity to preserve the issues of the tax reassessments for 1998 and 1999 at a different reassessment by accepting payment in full for such tax years. See *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 695; *Fulton County Bd. of Tax Assessors v. Dean*, supra at 138.

OCGA § 48-5-299 (c) was passed to protect the taxpayers from annual reassessments and not to protect a county board of tax assessors, because a board of tax assessors already had the right and power to leave the property at any reassessment for three or more years or to seek a new reassessment for the next two years by means of a further investigation to justify a reassessment, even if they lost an appeal. See OCGA § 48-5-299 (c).

> Moreover, the title and caption of the amendment to OCGA § 48-5-299 which later became subsection (c) make clear that this subsection was intended to apply only to reassessments established by the Board of Equalization or superior court. *Moreton Rolleston, Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, 228 Ga. App. 371, 377 (491 SE2d 812) (1997). In *Rolleston*, we stated that the General Assembly's intent in enacting this amendment was to prevent county tax assessors from reassessing property upward each year, even though they would often have to compromise, settle, or lose appeals before the board of equalization or superior court. In this way, the tax assessor could get at least a small reassessment most of the time, and often the property owner would eventually give up because of the costs in legal fees, litigation, and time. Id. at 375.

*Cullum v. Chatham County Bd. of Tax Assessors*, 243 Ga. App. 865, 866 (534 SE2d 535) (2000).

While the board of tax assessors must apply OCGA § 48-5-299 (c) when an appeal goes to a determination of assessment either by the board of equalization, arbitration, or the superior court on appeal, whether it wins, loses, or there is a compromise, such subsection must be applied in pari materia with other taxing statutes and decisions so that there is harmony between the reassessment scheme and the appeal process. *Cullum v. Chatham County Bd. of Tax Assessors*, supra at 866-867. As in this case, there can be no attempt to reassess and collect additional taxes after payment for those prior tax years; if a reversal on appeal or an affirmance comes after the taxes have been paid, then the tax collector is barred from such different

assessment by not preserving such issue pending appeal. See *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 695.

The General Assembly expected the tax appeal to go through the board of equalization, arbitration, or the superior court de novo at the first term following the filing, which should be before the following taxable year was assessed and taxes collected; it was not expected that the next two years of taxes would be assessed and collected prior to a final decision on the appeal. Under the facts and circumstances of this case, as set forth in Division 1, such payment of taxes as assessed for 1998 and 1999 precludes a different reassessment of the property in those years, frustrating the literal application of OCGA § 48-5-299 (c). Such payment of taxes based on the prior assessment bars the application of the reassessment affirmed on appeal from giving rise to additional taxes for the same years outside of the normal assessment and appeal process under OCGA §§ 48-5-306 (b) and 48-5-311 (e) (2) (A); see generally *Dillard v. Denson*, 243 Ga. App. 458, 460-461 (533 SE2d 101) (2000). Thus, the board of tax assessors can retroactively apply the affirmed 1997 reassessment to 1998 and 1999 under OCGA § 48-5-399 (c); after the taxes for 1998 and 1999 have been assessed and paid at a different rate, more taxes cannot be collected based upon the final appeal. Further, to do what the appellees have done constitutes a reassessment for those years 1998 and 1999 over what has already been assessed and collected. See generally *Cobb County Bd. of Tax Assessors v. Morrison*, supra at 695; *Moreton Rolleston, Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, supra at 407 (2).

The clear intent of the General Assembly in passing OCGA § 48-5-299 (c) was to prohibit the reassessment for two consecutive years following an appeal where the board of equalization, arbitrators, or the superior court determined the reassessment on appeal. *Moreton Rolleston, Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, supra at 407-410. Such intent is frustrated whenever the appeal process drags into subsequent taxable years and taxes are paid, as in this case.

DECIDED OCTOBER 4, 2004 — 

*Coleman, Talley, Newbern, Kurrie, Preston & Holland, Edward F. Preston*, for appellant.

*Elliott & Blackburn, Walter G. Elliott II*, for appellees.